# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

MICHAEL S. GRENDELL,     )
              )
      Plaintiff   )
   vs.         )
              )
STATE OF MAINE,      )
              )
JOHN E. COTE, in his Personal and  )
Professional Capacity, as Colonel, Maine )
State Police,        )
              )
MAINE STATE POLICE,    )
              )
CHRISTOPHER GROTTEN, in his Personal )
And Professional Capacity as Major,  )
Maine State Police,      )
              )  CV-2019-
BRIAN MACMASTER, in his Personal  )
And Professional Capacity, Maine Office )
Of the Attorney General     )
              )
BRIAN BEAN, in his Personal   )
And Professional Capacity as Trooper,  )
Maine State Police,      )
              )
TUCKER BONNEVIE, in his Personal  )
And Professional Capacity as Detective, )
Maine State Police,      )
              )
ROBERT BURKE, in his Personal   )
And Professional Capacity as Trooper,  )
Maine State Police,      )
              )
ALDEN BUSTARD, in his Personal   )
And Professional Capacity as Sergeant,  )
Maine State Police,      )
              )
BERNARD CAMPBELL, in his Personal )
And Professional Capacity as Trooper,  )
Maine State Police,      )

1

JEREMY CARON, in his Personal                )
And Professional Capacity as Trooper,        )
Maine State Police,                          )
                                             )
DAVID COFLESKY, in his Personal              )
And Professional Capacity as Trooper,        )
Maine State Police,                          )
                                             )
BRYAN CREAMER, in his Personal               )
And Professional Capacity as Trooper,        )
Maine State Police,                          )
                                             )
ANDREW HARDY, in his Personal                )
And Professional Capacity as Trooper,        )
Maine State Police,                          )
                                             )
CHRISTOPHER HARRIMAN, in his                 )
Person and Professional Capacity as          )
Sergeant, Maine State Police,                )
                                             )
CALEB MCGARY, in his Personal                )
And Professional Capacity as Trooper,        )
Maine State Police,                          )
                                             )
JEFFERY MILLS, in his Personal               )
And Professional Capacity as Sergeant,       )
Maine State Police,                          )
                                             )
JONAH O'ROAK, in his Personal                )
And Professional Capacity as Detective,      )
Maine State Police,                          )
                                             )
GREGORY ROY, in his Personal                 )
And Professional Capacity as Detective,      )
Maine State Police,                          )
                                             )
BENJAMIN SWEENEY, in his Personal            )
And Professional Capacity as Detective,      )
Maine State Police,                          )
                                             )
CHRIS TREMBLAY, in his Personal              )
And Professional Capacity as Detective       )
Sergeant, Maine State Police,                )

2

|  |  |
|---|---|
| MAINE STATE POLICE BOMB TEAM, | ) |
| By John Smith One, | ) |
|  | ) |
| GOVERNMENT AGENCY A, | ) |
|  | ) |
| JOHN DOE, | ) |
| and | ) |
|  | ) |
| JANE DOE, | ) |
| Defendants | ) |

**COMPLAINT**
**(WITH DEMAND FOR JURY TRIAL)**

## I.      The Parties

1.      Plaintiff is a resident of Dixmont, Penobscot County, Maine.

2.      At all times pertinent herein, Defendants State of Maine; John E. Cote, Colonel, Maine State Police; Christopher Grotten, Major, Maine State Police; Brian MacMasters, as agent of the Maine Attorney General's Office; Maine State Police Bomb Team, are all State of Maine agencies, departments, supervisors, policy makers, or officials, located in Augusta, Maine.

3.      Gardner Construction Enterprises, LLC, a/k/a Gardner Construction, is located in Hermon, Maine.

4.      The remaining named Defendants are members of the Maine State Police, with primary locations in Augusta, Maine, to wit: Taylor Bagley, Brian Bean, Tucker Bonnevie, Scott Bryant, Robert Burke, Alden Bustard, Bernard Campbell, Jeremy Caron, Rod Charrette, Paul D. Casey, David Coflesky, Saunder Cowie, Darren Crane, Bryan Creamer, Scott Dalton, Joshua D'Angelo, Scott Duff, Mark Ferriera, Adam Gould, Nicholas Grass,

3

Andrew Hardy, Christopher Harriman, Michael Lane, James MacDonald, Jedediah Malcore, Caleb McGary, Peter Michaud, Jeffery Mills, Steve Morrell, George Neagle, III, Jeffery Parks, Mark Poulin, Gregory Roy, Todd Stetson, Jared Stedman, Eric Sucy, Benjamin Sweeney, Chris Tremblay and Dave Tripp.

5.    John Doe, Jane Doe, John Smith, and Government Agency A, are named as Defendants as Plaintiff and his agents have not been able to obtain all discovery on a voluntary basis, and they are therefore listed out of an abundance of caution, to the extent viable Defendants are yet unknown.

## II. Jurisdiction and Venue; Demand for Jury Trial

6.    The Court has jurisdiction pursuant to 28 USC §1331, and may exercise supplemental jurisdiction over the asserted State Law claims pursuant to  28 USC §1367(a).

7.    In addition, claims are made for violations of 42 USC §§1983, 1985(3), 1986, 1988; and Title II of the Americans with Disabilities Act (ADA), 42 USC §§12132, et seq; and Section 504 of the Rehabilitation Act, 29 USC §794, as well as discrimination under Maine Law, Maine Human Rights Act.

8.    Venue lies in the United States District Court for the District of Maine sitting at Bangor, Maine, pursuant to 28 USC §1391(b)(1),(2) and local Rule 3(b).

9.    Trial by Jury is demanded.

## III. General Allegations-Background Facts

10.   Plaintiff alleges and realleges Paragraphs 1-9, of this Complaint, and makes them a part of this Section III.

11.    On or about 06/14/2018, Michael Grendell began experiencing mental health issues, neighbors, family and friends noted his bizarre words and actions, including references to "zombies," and "persons chasing him;"

12.    On or about 06/14/2018, Michael Grendell began changes in his lifestyle and demeanor, stopped employment, health and hygiene habits changed for the worse, and his        demeanor and behavior began deteriorating, all of which was noted by friends and     neighbors.

13.    On or about 06/14/2018, Michael Grendell began carrying, displaying and discharging firearms in an inappropriate and unsafe manner, all of which was   noted by friends and neighbors, as unusual and bizarre behavior adding to their conclusion that he was mentally ill.

14.    On or about 06/27/2018, Michael Grendell had several encounters with his best friend, Lee Bell, involving the inappropriate use of firearms or a hatchet, including discharging the firearm during the attempt to recover what he thought was his stolen mail or delivered packages by Lee Bell; the bizarre behavior was confirmed by Jacob Irish.

15.    On or about 06/28/2018, Lee Bell notified Law Enforcement of the bizarre activities of Michael Grendell, and told Law Enforcement that Michael Grendell appeared to be having a mental health crisis, and that he did not want Mr. Grendell injured or harmed by Law Enforcement, which is why he delayed in calling police; Jacob Irish made similar comments to police.

15.    At all times pertinent herein, all Law Enforcement involved in actions against

Michael Grendell, knew or should have known, that he was suffering from severe mental health issues, that he was a mentally ill and disabled person and that he was unable to make  informed decisions, and his friends, neighbors and relatives did not want him harmed or injured, but only helped for his severe mental illness and condition.

16.   On or about 06/28/2018, at approximately 1206 hours, Sergeant Alden Bustard, with Trooper Jeremy S. Caron, and Trooper Bryan Creamer, were dispatched to 34 Lear Lane, Dixmont, Maine, for a citizen, Lee Bell, requesting assistance for a gun shot at him by Michael Grendell noting, "Bell wants Grendell to get help," and noting, "Bell believes that Grendell is having a mental crisis;" Bell wanted to avoid Grendell being shot by police, thus delayed calling police until 06/28/2018.

17.   On or about 06/28/2018, at approximately 1343 hours, the three officers were at Grendell's 2 Fox Lane, Dixmont property and made verbal commands over the PA system for Grendell "to come out of the residence with his hands out."

18.   Also, at 1343 hours, Sergeant Alden Bustard reported "Trooper Caron announced that we were the State Police and ordered him out; I began yelling commands to come out"; he reported after several minutes, a tall, thin male subject walked out the front door of the residence; the subject did not have anything in his hands and was wearing only underwear; the subject asked if we were the 'real police'; I identified us as Maine State Troopers and ordered him to walk away from the residence; the subject would not follow our commands' after a few seconds, the subject stated that was ok and walked back into the residence and closed the door behind him; we had no further contact with the subject."

19.    Trooper Bryan Creamer reported "After several times calling on the PA, Grendell exited

the  residence and appeared to be in only his underwear; Grendell said something that

I could not hear and he turned and went back inside and closed the door".

20.    At no time did the three Troopers take Plaintiff into protective custody, pursuant to 34-B

M.R.S.A. §§3862(1),1(A) or Title II of the Americans with Disabilities Act (ADA), 42

USC §§12131, et seq., or otherwise.

21.     Trooper Creamer deployed to the rear of the residence to establish perimeter security

around the residence.

22.    Sergeant Bustard contacted Detective Greg Roy, assistant commander of the State Police

Tactical Team (TT); he activated the TT shortly thereafter, along with additional officers

to secure the perimeter.

23.    Assistant District Attorney, Brendan Trainor, approved charges for Reckless Conduct

with a  Firearm, a Class C crime, at 1425 hours.

24.    Over the next several minutes, Sergeant Bustard reported from 1442 hours to 1607

hours, Trooper Brian Bean, Trooper Josh D' Angelo, Trooper Adam Gould, Trooper

Marc Poulin, Trooper Taylor Bagley, Penobscot County Deputy Steve Marco, arrived at

the scene; the TT assumed command and Maine State Police negotiators arrived;

Sergeant Bustard remained throughout the night.

25.    Trooper Paul D. Casey reported that on 06/28/2018 at 2:00 p.m., (1400 hours), he spoke

with assistant TT commander Gregory Roy, and overheard Detective Roy tell Sergeant

Bustard by phone "to keep attempting contact with the suspect via cruiser PA for a period

of time and if he did not respond to them, then the TT would activate and assist them"; a

short time later, Detective Roy activated the TT   to   Dixmont,   and   Trooper   Casey
responded.

26.    Trooper Casey reported that he learned Sergeant Bustard informed Detective Roy that
       "Grendell came out of the residence, clothed only in his underwear, and stated to them
       something to the effect that 'they were not the real police,' and went back  inside,        and
       that Grendell was refusing to communicate."

27.    Trooper Casey was the "Assistant Team Leader for the Reactionary Team"; other
       reactionary team members were Detective Roy, Sergeant Christopher Tremblay,
       Sergeant Scott Dalton, Corporal James MacDonald, Trooper Sander Cowie,
       Sergeant Nicholas Grass.

28.    He also reported that Maine State Police Crisis Negotiations (CNT) Detective Mark
       Ferreria and Trooper Jedidiah Malcore, were in a vehicle with them; Trooper Casey
       noted,  "Detective Roy and I had spoken about not pushing Grendell into a confrontation
       with us"; he referred to use of the 'LENCO' and that Grendell had no telephone.

29.    Grendell stepped out of the door holding a dog by a leash with a handgun in one hand and
       Civil War replica rifle strapped on his shoulder; Grendell activated his truck's alarm
       with flashing lights and alarm. This was at about 6:02 p.m. (1802 hours).

30.    Trooper Casey reported that Detective Roy telephoned CNT commander, Bernard
       Campbell, about contacting Grendell's physician or a mental health physician on
       communications with Grendell.

31.    At about 3:30 a.m. on 06/29/2018, Grendell's truck alarm went off again with lights
       flashing. Grendell fired inside his residence.

32. The Incident Management Team (IMT) and Bomb Team were responding "to assist in the operation."

33. The arrest and search warrants did not permit robot/bombing or order bombing and shooting of Grendell.

34. Trooper David Cofleskey reported that on 06/28/2018, he was advised by assistant TT commander Detective Greg Roy, "that we would be responding to a barricaded male subject in Dixmont; he was at a training at the time with Detective Roy; Trooper Cofleskey was the perimeter team leader, with Trooper Scott Duff."

35. Coflesky reported that other Troopers noted Grendell "questioned whether they were the 'real police' or not;" The 'LENCO' pole-arm was used to break a window, the provocation that caused Michael Grendell to fire his gun at what he thought was the "fake police" with return fire.

36. Sergeant Scott E. Dalton reported he was notified on 06/28/2018 at 14:56 hours of the TT activation in Dixmont; he was assigned to the Reaction Team, in the armored truck.

37. Trooper Saunder Cowie, Team Medic stated that Grendell may have a staph infection which is highly contagious.

38. Trooper Dalton was with his K-9, Hero.

39. Sergeant Chris Tremblay drove the truck; at 3:30 a.m. on 06/29/2018, Grendell set his truck alarm off.

40. Corporal James B. MacDonald reported that on 06/28/2018 at 1430 hours, he was assisting with "Active Shooter Training at Old Orchard Beach High School; Detective Roy was running the training and the tactical team OD for the day."

41.   Detective Roy advised other team members assisting with the training "that we were being  activated to Dixmont for a barricaded male who shot at his neighbor the previous evening."

42.   Sergeant Peter B. Michaud reported "at one point, I heard on the radio from other tactical team members that Grendell exited the house with a pistol in his hand and a slug  (sic) long rifle as he approached the Bear Cat; I heard the CNT member yelling        repeated orders on the PA system to 'Drop the gun;' Grendell then retreated back into the house."

43.   Trooper Stephen M. Morrell arrived at 1520 hours, (on Thursday, 06/25/2018) (sic); when he arrived, "TT Member Caleb McGary was on scene"; he noted "The residence was a vinyl sided A frame truss type structure and was visible from the North Road; the structure had four walls that the A frame trusses were attached to."

44.   Grendell activated his truck alarm system.

45.   The New Hampshire State Police Tactical Team and Maine State Police Bomb Team had been activated and Bangor PD was deploying an additional Lenco.

46.   The New Hampshire State Police Tactical Team was reported to include mental health crisis experts, to assist the Maine State Police; it was also reported that the New Hampshire unit was in Newport, Maine, on route, when the Maine State Police detonated the bomb and destroyed Grendell's house, thus failing to wait for the New Hampshire Team's arrival.

47.   Trooper GJ Neagle, III arrived at 1501 hours and met his "Teammate Caleb McGary who was the acting OIC." Trooper McGary stated Grendell "was having a 'mental breakdown'."

10

48.   At 1754 hours, Trooper Eric Sucy "announced over the radio that Grendell had egressed from the residence and had his dog on leash in one hand, was armed with a pistol in the other and had a rifle slung over his shoulder.

49.   It was later reported that Grendell walked around his parked vehicle a little and then returned inside the residence.

50.   Trooper Eric Sucy reported that Trooper McGary told him Grendell was suffering mentally, 1st responded to MSP in his underwear and asked if they were the "real police".

51.   Trooper Sucy observed at 1729 hours, Michael opened the door and posted a black piece of tape vertically on the door and then shut the door.

52.   At 1754 hours, Michael looked out the window, then came outside with a black handgun in right hand, Civil War replica rifle and his dog with him and then returned inside.

53.   At 0300 hours (06/29/2018), Michael set off his truck alarm.

54.   Detective Roy ordered Corporal MacDonald "to deploy 2 'SWAT' balls toward the siding  on the residence…. The tactic was ineffective and Michael did not  respond to the action."

55.   At 5:15 a.m. on 06/29/2018, the side window to the house was breached and Grendell shot at the armored truck, with return fire, over the next 4-hours.

56.   At 8:21 a.m. on 06/29/2018, Detective Roy advised he was planning on having the Bomb  Team create an "Explosive Breaching Charge (EBC) to take down the wall of the residence so we could at least visually see where inside the residence Grendell was. Grendell was arbitrarily shooting at us for hours."

57.   Detective Roy then advised that the EBC would be introduced through one of the

11

windows and detonated.

58.   Major Christopher Grotton, a supervisor, reported that on 06/29/2018, he responded to the scene; he noted Maine State Police assets present, "include the Tactical Team, Crisis Negotiations Team and patrol units."

59.   The alleged crimes were "reckless conduct with a dangerous weapon and criminal threatening."

60.   Major Grotten was briefed by Lieutenant Rod Charette and other supervisors and had full knowledge and control of the activities.

61.   Major Grotten stated he spoke with "TT assistant commander Greg Roy and the requests for the MSP Bomb Team, New Hampshire State Police Tactical Team and Bangor PD Special Response Team," were approved by him.

62.   Major Grotten reported shots at the Lenco and in the trees near Troopers.

63.   Colonel Cote, as leader of the Maine State Police, spoke to Brian MacMaster of the AG's Office and "as a unified command" decided to use an explosive on the house, all done through those governmental officials own actions.

64.   The bomb was to be placed "inside in order to minimize danger to personnel."

65.   The LENCO then moved up to the house and breached a window;  Grendell  shot  at  the LENCO and Trooper McGary and Trooper Hardy returned fire.

66.   The Maine State Police Bomb Team was activated "to blow a hole in the wall of the residence so team members could gain a better vantage point to the interior of the residence and see Michael."

67.   At 915 hours, the Bomb Team robot drove down the road with an explosive charge; the

robot was shot and 'dead' at about 9:20 hours.

68.    Major Grotton reported, "I was standing at the door of the Bomb Team vehicle when Sergeant Chris Harriman informed him the robot was dead; I was told they could still detonate the device at the side of the residence; Sergeant Harriman asked if he should 'blow it' and I instructed him to detonate it, all done through the Governmental officials own actions.

69.    Sergeant Harriman activated the detonation causing a large explosion."

70.    Thereafter, the bomb was detonated and "a cloud of dust," and "loud explosion," with "the house obliterated and roof line had fallen to the ground."

71.    At no time did anyone before the robot/bombing give an appropriate warning to Grendell.

72.    Grendell climbed, obviously dazed, unable to hear, in a concussed state, from the residence with a baseball bat, picked up a rifle and while trying to load it, was shot by Troopers McGary and Trooper Hardy.

73.    At no time was an appropriate warning given to Grendell before he was shot.

74.    It was reported that after the house was bombed, there was a propane leak, requiring the Fire Department to intervene.

75.    Detective Chris Tremblay escorted the Dixmont Fire Department to the destroyed house to close the valve on the propane tanks.

76.    State of Maine Forensic Clinical Neuropsychologist, Dr. Robert Riley, Psy.D., of the Maine State Forensic Service, conducted mental health exams on Michael Grendell, pursuant to 15 M.R.S.A. §101-D.

77.    Dr. Riley reported that at all times of the events occurring in Dixmont, Maine, that

13

Michael Grendell was not competent, suffered a "Significant psychotic episode," "guided by severe and prominent psychotic symptoms," "records describe him acting in very unusual and bizarre ways, and appears to suffer from, significant psychotic symptoms, including hallucinations and delusions and for a period of time leading up to and including the alleged incident."

78. Dr. Riley reported, "He again had been suffering from a significant mental health decomposition for several months, which had been witnessed by other people around him."

79. After the explosion, Mr. Grendell was in a state of post-traumatic amnesia, as he had been concussed by the blast, leading to further confusion and shock at that time.

80. These injury factors also reduced his ability to act in a directed or planful manner after the time of the explosion.

81. Depression was also reported by Dr. Riley.

82. Michael Grendell has limited recall of events during the standoff, but felt  under  siege and in survival mode, and that he was considered mentally incompetent at that time.

83. Search Warrant and Affidavit Application and Arrest Warrants-referenced "Building, vehicle and person (Michael Grendell) to be searched," and to search for "a handgun and all firearms and ammo, a UPS package, a  hatchet,"  and  referenced  "criminal threatening-Class D," "property used" "and person  to arrest or restrain" and reported "Michael Grendell has been suffering a mental health crisis."

84. The search warrant approved the requests by Trooper Jeremy S. Caron, for the seizure of the (3) listed property categories and Michael Grendell.

85.     Nowhere in the search warrant did the Court authorize the bombing of Michael
        Grendell's residence or him or his animals, nor the smashing in of his window with
        the LENCO pole-arm, nor shooting him after bombing him in    his    disabled    state,
        including "shock wave" effects on the sensorineural components of Michael Grendell's
        person, his disorientation, including hearing, vision, cognitive, neurologic, physical and
        psychological affects and other over pressure effects, before shooting him.

86.     There was no authorization or right to use an Explosive Breaching Charge (EBC) or
        'bomb'; with or without the use of robots, drones, armored vehicles or otherwise.

87.     There was no authorization to use a negligently manufactured EBC or bomb, containing
        "too much explosive material" whether negligently, recklessly, intentionally or otherwise.

88.     Any arrest warrant did not authorize the use and level of excessive deadly force including
        EBC, bombs or shooting a disabled elderly man, as occurred here.

89.     Michael Grendell suffered severe personal injuries, both physical and psychological from
        the explosions and shooting, and his residence was completely destroyed; he has incurred
        significant costs, expenses and attorneys' fees, lost income and earning capacity, incurred
        medical bills and expenses, suffered a loss to his reputation, and suffered a loss to his
        civil and constitutional rights under the U.S. and Maine Constitutions.

90.     At the time of the robot/bomb and after when he was shot by police, deadly force should
        not have been used because: (a) an immediate threat to police officers or citizens did not
        exist, and (b) police failed to follow the requirement that, where feasible, a warning must
        be given first before using deadly force, and in fact it was feasible to accomplish that
        requirement, (c) he suffered a mental disability; (d) he was deaf, concussed and without

15

cognitive ability to hear or understand, all caused by them bombing him.

91. On information, Gardner Construction, LLC, of Hermon, Maine, acted as agents for the State of Maine and Defendants, to bulldoze and destroy Michael Grendell's property, after the bombing, and failed to secure his property, resulting in loss and spoliation of evidence and property, vandalism to his property, and conversion thereof, including the wrongful actions of several members of the Maine State Police who were there to survey, evidence and protect the scene.

92. It was determined that Michael Grendell suffered substantial physical and psychological injuries as a result of the injuries he sustained in the bombing and shooting, including, facial, jaw, head injuries, shoulder, body and torso injuries; injuries to extremities; neuropsychological injuries; substantial lost earning and lost earning capacity; pain and suffering; both physical and psychological; permanent impairment; property damages; attorneys' fees.

93. Michael Grendell was finally charged with reckless conduct with a firearm, and pled no contest; all other charges were dismissed, on 10/12/2018.

## COUNT I
### (42 USC §1983-All Defendants)

94. Plaintiff alleges and realleges Paragraphs 1-93 in the foregoing, and makes them a part of this Count I.

95. Mr. Grendell had a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution not to be robot/bombed or thereafter shot by Defendants, nor denied his rights to services, aids and care for his physical, medical

and mental disabilities.

96. At all times relevant to this Complaint, Defendants were acting under the color of law, statute, ordinance, regulations, actions or usage of the State of Maine, and the supervisors' own actions or inactions were affirmatively linked to that behavior and characterized as supervisory enforcement, encouragement, coordination, acquiescence or gross negligence amounting to deliberate indifference; and the officials had a) knowledge of the facts, from which b) the officials could draw inferences c) that a substantial risk of serious harm existed and d) the supervisors conduct led inexorably to the Constitutional violations caused thereby and e) they had notice both actual and/or constructive of the ongoing violations.

97. The Defendants' robot bombing and subsequent shooting of Plaintiff, constituted an excessive use of deadly force.

98. By the actions described above, the Defendants have deprived the Plaintiff of his clearly established rights guaranteed by the Fourth and Fourteenth Amendments to the Constitution of the United States, to be free from an unreasonable search and seizure, and the Constitution and Laws of the State of Maine.

99. The Defendants, by and through their agents, knowingly and with deliberate indifference and reckless disregard to the constitutional rights of the Plaintiff, maintained and permitted official policies and customs and practices of permitting the occurrence of the types of wrongs set forth hereinabove.

100. These policies and/or customs and practices included, but not limited to, excessive deadly force, robot use, bombing, shooting, and the treatment of arrestees, including those with

mental disabilities, and those with post-bombing hearing loss, concussive syndrome and cognitive loss.

101.   Also, the Government policies were the moving force behind their actions, including, but not limited to, the purchase, transportation, storage, preparation, practice and use of bombs and EBC devices on citizen of Maine and their property, and subsequent to bombing, the shooting of those citizens, using Plaintiff's incident as a training exercise and/or using Plaintiff as a human guinea pig to effect their first fully executed training mission to robot/bomb and shoot an elderly and mentally disabled, deaf man.

102.   In addition, Defendants, Colonel Cote, Major Grotten and Brian MacMaster knew or should have known of the customs and practices which led directly   to   the   injuries sustained by the Plaintiff, and in violation of his clearly established rights, and said Defendants were directly involved with the actions and approved and sanctioned the same.

103.   The Defendants all failed to consider the following:

a.      The facts and circumstances of this case, including the level of crime alleged, and its severity,

b.      whether split-decision making was involved or delays were available to police, the      mental health of the arrestee, including his bizarre or irrational actions, confirming his lack of mental competence, alternative methods of  less  severe and drastic deadly force of a nature available to Law Enforcement to otherwise effect an arrest,

18

c.   and the totality of circumstances involved in the use of deadly force by
robot bombing Michael Grendell and his residence, rather than waiting for
assistance from mental health professionals, or other experts to analyze
and decide the least deadly force method to use and without any warning;

d.   after the bombing, knowing Plaintiff would be concussed, not cognitive,
and deaf, but shooting him without adequate warnings and without
imminent threat;

e.   under all the circumstances and available resources, and less drastic and
confrontational tactics, and de-escalation methods should have been used.

f.   Further, the Government Agencies involved, by use of robots/EBC/bombs
to effect arrests of mentally incompetent persons, did through its policies,
approvals, purchases, training and use thereof, maintained and condoned a
custom and practice of depriving individuals of their Constitutional Rights by
their traditions, policies, ordinances, statutes, manuals and actions, promulgated
by Law Enforcement of the agencies and Governments involved.

g.   The Defendants did, acting under color of law, and in their official capacities, and
individually, conspire to interfere with Plaintiff's civil rights and right to equal
protection of the law as found in 42 U.S.C. §1983 and the rights secured to him
by the United States Constitution and the Constitution and laws of the State of
Maine  and conspired to inflict a wrong against and injury upon Plaintiff.

h.   Further, the Defendants and Government Agencies involved failed to issue or use
widely accepted and non-lethal means by which to apprehend Michael Grendell, a

19

mentally ill or deaf and non-cognitive person, such as batons, tear gas, drones, mental health experts, pepper-spray,  Tasers, chemical mace, less than lethal munitions, or other non-deadly means of physical force, including throw phones, or writing boards and flash cards,  and as is part of the training of the officers involved, also did not act in accordance with the "protocol for the   reporting and investigation of the use of deadly force," in the Maine Law  Enforcement Officers Manual, and other applicable standards of care, and other Standard Operating Procedures and standards.

i.   The Defendants used Excessive Deadly Force a) by use of an explosive breaching charge (EBC) or bomb with robot, b) negligent manufacture of EBC, or bomb, by using   excessive or defective detonating material in making the bomb, c) failure to consider less destructive or invasive means of effecting the arrest or custody of Michael Grendell, d) failure to consult with structural/construction type engineer or expert before detonating bomb to determine damage, e) failure to consult with propane gas expert before detonation to determine damage, f) failure to consider damage to residence or animals, g) failure to consider injuries to Michael Grendell including concussive, over-pressure effects, hearing loss, disorienting effects of  bombing on him, and his subsequent acts after bombing to understand his actions rather than shooting him in his head and body, h) failure to consult and consider mental health experts to use alternative means of effecting an arrest, i) failure to use deescalating use of force for mentally a ill arrestee; j) converting a T.34-B matter into a training exercise for TT and Bomb Squad and others.

20

j.      Defendants illegally trespassed on Plaintiff's property.

104.   Such errant policies and/or customs and practices of the Defendants were the moving force behind the violation of Plaintiff, Michael Grendell's Fourth and Fourteenth Amendment rights, and the Defendants, and each of them, are liable for all of the injuries sustained by Plaintiff, as set forth hereinabove.

105.   An objectively reasonable police officer or Government official, or supervisor in each of the Defendants positions, would have understood that he/she was violating Mr. Grendell's clearly established Fourth and Fourteenth Amendment rights.

106.   The officers and officials conduct were so deficient that no reasonable officer or supervisor could have made the decision to robot/bomb or thereafter, shoot Grendell under the circumstances.

107.   Each of the officers' or supervisors' acts and omissions before, during and after the bombing, shooting and activities, constitute a conspiracy against Michael Grendell, and were malicious and outrageous, or were so outrageous that malice can be implied and considered more than a reckless disregard and deliberate indifference for Mr. Grendell; and Defendants knew of the dangers and protected themselves, rather than Grendell, all without adequate warning to Mr. Grendell.

108.   As a direct and proximate result of the Defendants' attack on Grendell, and the robot/bombing and subsequent shooting of him, Mr. Grendell was deprived of the rights, privileges and immunities secured by the United States Constitution, and he sustained life-threatening and permanent injuries, both physical, emotional and neuro-psychological, substantial pain and suffering, loss of enjoyment of life and recreational

activities, incurred medical costs, loss of earning capacity and he suffers a permanent impairment, all of which will continue in the future.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, for compensatory and punitive damages, against Defendants in an amount that is just and reasonable, including an award of attorneys' fees pursuant to 42 USC §1988, and award him any further relief it deems just and proper.

## **COUNT II**
### **(Conspiracy Under 42 U.S.C. §1985(3), 1986)**

109.  Plaintiff alleges and realleges Paragraphs 1-108 in the foregoing, and makes them a part of this Count II.

110.  The Defendants did, acting under color of law, and in their official capacities, and individually, conspire to interfere with Plaintiff's civil rights and right to equal protection under the law, as found in 42 U.S.C. §§1985(3),1986, and the rights secured to him by the United States Constitution and the Constitution and laws of the State of Maine.

111.  The actions of the officers, and supervisors and their omissions, before, during and after the robot/bombing and shooting of Michael Grendell's person and property, constituted a conspiracy against Michael Grendell, in violation of 42 USC §1985(3), 1986.

112.  Further, any of the officers and supervisors having knowledge that wrongs against Michael Grendell were occurring, including §1985 violations, with the power to prevent or aid against the wrongs, and neglecting to do so, are guilty of the violations as well.

113.  The officers and supervisors knew that Michael Grendell was mentally incompetent, or a mentally ill person, and not capable of making informed choices, acting in a bizarre

manner, and that he was suffering some kind severe mental breakdown, which as an elderly single white male, placed him in a protected class-base of protected persons, and here the officers had a tacit understanding that they would carry out the robot/bombing, notwithstanding other less lethal means available to them.

114.   The officers and supervisors knew or should have known, Michael Grendell was, post-bombing deaf, concussed and unable to cognate or understand his whereabouts or commands, and not capable of making informed choices, which as an elderly single white male, placed him in a protected class-base of protected persons, and here the officers had a tacit  understanding that they would carry out the bombing, notwithstanding other less lethal means available to them.

115.   Defendants were motivated by the class-based invidious discrimination and animus behind the conspiracy actions, due to Michael Grendell's class-based status as an elderly, single, white male with severe mental health disorders, deafness and inability to comprehend, all of which involved the conspiracy, for the purpose of depriving Michael Grendell of due process and equal protection and equal privileges and immunities, involving an overt act or acts in furtherance of the conspiracy, resulting in severe injury to Michael Grendell and his property, and animals.

116.   Each of the officers' and supervisors' acts and omissions before, during and after the robot/bombing, and shooting and activities, constitute a conspiracy against Michael Grendell, and were malicious and outrageous, or were so outrageous that malice can be implied and considered more than a reckless disregard and deliberate indifference for Mr. Grendell; as Defendants knew of the dangers and protected themselves, rather than

23

Grendell, all without warnings to Mr. Grendell.

117.    To the extent law enforcement extended or exacerbated the situation to create and/or use the incident as a training exercise for police, is a further violation of Michael Grendell's rights, and further evidence of Defendants' wrongdoings.

118.    The police and supervisors became impatient, angry, upset, unwilling to wait for the New Hampshire Mental Crisis Team, and because Michael Grendell was exercising his right to protect himself or his property, to keep and bear arms, or exercise his Constitutional rights, exacerbated their wrongs against Michael Grendell and to the point of bombing him as a retaliatory method.

119.    It was not objectively reasonable to use deadly force against Michael Grendell, and he has a liberty interest in his bodily integrity.

120.    The Defendants did, acting under the color of law in their official capacities, and individually, violated those rights.

121.    The Defendants, each of them in their official capacities, and individually, caused the Plaintiff harm by that said violations.

122.    The Defendants, each of them in their official capacities, and individually, were deliberately indifferent to the rights of the Plaintiff under the Fourteenth Amendment of the United States Constitution providing him rights of due process to bodily integrity.

123.    Further, the Defendants were deliberately indifferent to the Plaintiff's serious medical needs.

124.    Such deliberate indifference also violated the Plaintiff's right to due process under the Fourteenth Amendment to the United States Constitution.

125.    As a direct and proximate result of the of the Defendants' robot/bomb and subsequent shooting of him, Mr. Grendell was deprived of the rights, privileges and immunities secured by the United States Constitution, and he sustained life-threatening and permanent injuries, both physical, emotional and neuro-psychological, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and he suffers a permanent  impairment, all of which will continue in the future.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, for compensatory and punitive damages, against Defendants in an amount that is just and reasonable, including an award of attorneys' fees pursuant to 42 USC §1988, and award him any further relief it deems just and proper.

## COUNT III
**(Disability Law Violation-Title II of the Americans with Disabilities Act (ADA), 42 USC §§12132, et seq, and Section 504 of the Rehabilitation Act, 29 USC §794)**

126.    Plaintiff alleges and realleges Paragraphs 1-125 in the foregoing, and makes them a part of this Count III.

127.    The interaction between Defendants and Michael Grendell, was informed and influenced by his mental disability and post-bombing deafness, concussed state and non-cognitive state; in particular, the warrantless entry into Plaintiff's home by using a LENCO pole-arm to break into his home, and to robot/bomb him and his property, with an explosive device, failure to provide him services and medical care while he was under the rubble of his destroyed home, and then shoot him, all without adequate warnings, violated  the  Fourth,  Eight  and  Fourteenth  Amendments  and  Federal  Disability

Discrimination Law.

128. Also, the Defendants were unjustified in entering the house with robots or pole-arm extensions, and setting off the violent chain of events resulting in provocation escalation.

129. The Defendants actions constituted an intentional discrimination or deliberate indifference in the providing of medical care and treatment of the Plaintiff; Plaintiff, by reason of his <u>mental</u> and <u>physical</u> disabilities, and he was excluded from participation in, or deprived the benefits of, the services, programs, or other activities of a public entity, or otherwise subjected to discrimination by the Defendants, that their conduct was intentional and that the Defendants exclusion, denial or discrimination and deliberate indifference against Plaintiff, proximately cause him damages.

129. While Defendants executed a discrimination policy against Mr. Grendell, several of the officers were policymakers and the Government had a policy of discrimination, and the discrimination was intentional since the officers had duty and the public entities as well, to create policies and procedures to prevent discrimination based on disability and therefore, an official policy actually exists for Constitutional violations of the ADA and Rehabilitation Act by Defendants.

130. The Defendants refused proper, appropriate and adequate services, auxiliary aids, or proper commands, and then became annoyed, impatient and perturbed with Plaintiff, even though they knew or should have known Plaintiff could not understand or hear their commands and they intentionally and with deliberate indifference, failed and refused to wait for, or provide, psychological or mental health experts to arrive and assist

with providing those necessary services and programs to Plaintiff regarding his disabilities.

131.   At all times pertinent herein, Defendants knew or should have known of Plaintiff's disabilities, but they intentionally or with reckless disregard, refused to communicate with   him in a way he could understand including in writing, then took improper actions by activating robot/bombs, shooting him when he could not understand or hear or comprehend and as Defendants knew or should have known that Plaintiff had said disabilities, yet refused to accommodate and communicate in appropriate alternative ways.

132.   Mr. Grendell has rights as a "class of one," equal protection rights, including but not limited to denial of medical services, mental health services and deaf services.

133.   The Defendants actions in this disability claim by the Governmental entities occurred in the operation of public service, programs and activities, including transportation, all of which were violated by Defendants.

134.   There were no exigent circumstances warranting the detonation of a bomb outside of his house, or entry inside the house, or thereafter shooting him, considering  his  mental  and physical disabilities.

135.   The Defendants actions in this disability discrimination claim by the Government entities occurred in the operation of public services, programs and activities including transportation, all of which was violated by Defendants.

136.   Mr. Grendell was a qualified individual with a physical and mental disability, and hearing and cognitive loss, who, by reason of such disabilities, should not have been excluded

27

from participation in nor have been denied the benefits of the services, programs, or activities of the public entities, or been subject to discrimination by any such entity, which violations thereof occurred against Mr. Grendell by Defendants, by reason of his disability.

137.   The Defendants intentionally, wrongfully, and with deliberate indifference, denied to Mr. Grendell the programs, services or activities covered by Federal Disability Discrimination Laws prohibiting discrimination, that were available and due to Plaintiff at all times pertinent.

138.   The actions of Defendants were part of an official custom, policy or practice resulting in violations of Plaintiff's rights herein.

139.   Under the Americans with Disabilities Act (ADA), local and State agencies are required to give equal access and equally effective services to people with disabilities which was codified to Defendants in 28 CFR 35.130, and they may not deny people an opportunity to participate in their programs, or give them an opportunity that is less effective than the opportunity given to others, which requires police departments to provide mental health services to a mentally disabled person, or a qualified interpreter, TTY services, visible warning devices, white board written warnings and instructions, captioned materials and  other auxiliary aids to ensure effective communication with mentally ill, deaf or non-cognitive persons, as noted in 28 CFR §35.160, available to Defendants at all times, as follows:

   a.(1)   A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with

28

disabilities are as effective as communications with others;…

b. (1)   A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity;

b. (2)   The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place; in determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities; in order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

140.   No 11th Amendment immunity exists to the State under the ADA and Rehabilitation Acts, as Congress abrogated any such immunity that the State might have in connection with such claims.

141.   Lastly, to the extent applicable, §504 of the Rehabilitation Act and under the ADA, are noted for violations against Mr. Grendell regarding the medical treatment decisions or

lack thereof, framed within the context and challenge within the disability discrimination context which occurred here, including inadequate training, supervision, and execution of duties.

142. No reasonable officer or supervisor could have concluded that robot/bombing Michael Grendell's home and person and then shooting him in his further disabled state, were in any way constitutionally or legally justified.

143. As a direct and proximate result of the of the Defendants' robot/bomb and subsequent shooting of him, Mr. Grendell was deprived of the rights, privileges and immunities secured by the United States Constitution, and he sustained life-threatening and permanent injuries, both physical, emotional and neuro-psychological, substantial pain and suffering, loss of enjoyment of life and recreational activities, incurred medical costs, loss of earning capacity and he suffers a permanent  impairment, all of which will continue in the future.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, for compensatory and punitive damages against Defendants in an amount that is just and reasonable, including an award of attorneys' fees, and award him any further relief it deems just and proper.

## COUNT IV
**(Assault/Battery-Defendants)**

144. Plaintiff alleges and realleges Paragraphs 1-143 in the foregoing, and makes them a part of this Count IV.

145. The Defendants' actions against Plaintiff on June 28-29, 2018, were uninvited,

unwelcome and unprovoked.

146.    The Defendants assaulted and battered Plaintiff without his consent, permission or a valid basis therefore by threatening, accosting him, physically assaulting him, detaining him improperly and demanding he be criminally charged with a crime, trespassed on his property, prohibited him from leaving of his own accord and bullying, bombing and shooting Plaintiff, all on his own property, and they intended to cause harmful or offensive contact to Plaintiff.

147.    As a direct and proximate result of the assault and battery of Plaintiff by Defendants, Plaintiff has been seriously damaged and injured, as aforesaid.

148.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, against Defendants in an amount that is just and reasonable, and award him any further relief it deems just and proper.

## COUNT V
### (Negligence-Defendants)

149.    Plaintiff alleges and realleges Paragraphs 1-148 in the foregoing, and makes them a part of this Count V.

150.    The Defendants owed a duty of care to Mr. Grendell to exercise reasonable care in the execution of their duties as police officers and Government agents, including properly assessing the incident including Grendell and his rights and necessity to properly assess the structural build of his home before bombing, none of which was done.

151.   The Defendants, and each of them, knew or should have known that their failure to exercise due care, individually and in the performance of their duties towards Plaintiff, and their negligent and improper provocation of a mentally disabled, elderly man by use of robots, drones, armored vehicles, guns, vehicles, machinery, bombs, shooting, and creating chaos and severely aggravating his disabled condition as part of that provoking, would cause the Plaintiff to be subjected to physical injuries, property damages and to suffer severe emotional distress and other damages.

152.   The acts of the Defendants in causing the injuries, damages, and the severe emotional distress of the Plaintiff, constitute a breach of their duty of care toward Plaintiff, by using excessive deadly force against him in lieu of taking other forms of action.

153.   The Defendants' also negligently failed to follow the "Protocol for the Investigation of the Use of Deadly Force" standards, as required under Maine Law, and consistent with the "Maine Law Enforcement Officers Manual", and other Standard Operating Procedures and Law Enforcement Standards.

154.   Defendants were negligent in their failure to properly hire, train, supervise and control Defendants' conduct, and their use and operation of vehicles, equipment, armored vehicles, robots, bombs, guns, arrest post-bombing, dealing with the disabled, and the entire operation on June 28-29, 2018, and thereafter.

155.   The Defendants' alleged violations of Maine Criminal Code, including, but not limited to the following, and included as factual evidence of wrongdoing, also constitute violations of standards of care, and negligence, including:

a) §802-Arson by explosion of property;

b) §805-Aggravated criminal mischief;

c) §806-Criminal mischief;

d) §1001-Criminal use of explosives.

156. As a direct and proximate result of the Defendants' breach of duty and the consequences proximately caused by it, Mr. Grendell suffered severe personal injuries, both physical and emotional, severe property damages, all as aforesaid.

157. All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101 et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, against Defendants in an amount that is just and reasonable, and award him any further relief it deems just and proper.

## COUNT VI
### (Negligent Infliction of Emotional Distress)

158. Plaintiff alleges and realleges Paragraphs 1-157 in the foregoing, and makes them a part of this Count VI.

159. The actions of Defendants were so offensive, vile, malicious and directed at Plaintiff to injure him, that he suffered emotional distress that a reasonable person could be expected to be harmed thereby, his privacy was so invaded, he became ill, his injuries will continue into the future and Defendants knew or should have known Plaintiff would be so effected by their misconduct.

160. As a direct and proximate result of the abuse of Plaintiff by Defendants, Plaintiff has

been seriously damaged, he suffered severe physical and emotional damages, all of which will continue in the future.

161.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, moves that this Honorable Court will grant Judgment in his favor, against Defendants in an amount that is just and reasonable, and award him any further relief it deems just and proper.

### COUNT VII
**(Intentional Infliction of Emotional Distress)**

162.    Plaintiff alleges and realleges Paragraphs 1-161 in the foregoing, and makes them a part of this Count VII.

163.    On or about June 28-29, 2018, without Plaintiff's permission or consent, Defendants trespassed on Plaintiff's property in Dixmont, Maine, Lenco-poled entry into his home, robot/bombed Plaintiff, Plaintiff's animals and his property, and then shot Plaintiff several times through his face and body, all while he  was  mentally  disabled  and  post-bombing deaf,  concussed  and  non-cognitive,  causing  him  severe  and  significant  injuries  and damages, and emotional injuries.

164.    At various other times, Defendants were physically assaultive and verbally abusive to the Plaintiff, battered him, threatening injury to him, his animals, and damage to his property.

165.    On or about June 28-29, 2018, without Plaintiff's permission or consent, at the his Dixmont residence, Defendants made explicit and degrading comments to Plaintiff, they relentlessly harassed Plaintiff with words and gestures, blocked his path of travel or restrained his free

travel, threatened injury to Plaintiff and his animals and his property, robot/bombed him, and his animals and property, and then shot him, causing Plaintiff significant and severe injuries, damages and emotional injuries.

166.  Defendants, by their extreme and outrageous conduct against Plaintiff, did intentionally or recklessly cause severe emotional distress to Plaintiff including times when they were inflicting bodily harm to him, and it was certain or substantially certain that such distress would result.

167.  The conduct of Defendants was so extreme and outrageous as to exceed all bounds of decency and it must be regarded as atrocious and utterly intolerable in a civilized society.

168.  The emotional distress suffered by Plaintiff was so severe that no reasonable person could be expected to tolerate it.

169.  As a direct and proximate result of the actions of the Defendants and their breach of duty to Plaintiff, Plaintiff suffered severe personal injuries, both physical and emotional, he incurred medical bills, lost earning capacity, underwent great pain and suffering, and he suffers a permanent impairment, all of which will continue in the future.

170.  The actions of the Defendants were willful, wanton, malicious and intended to cause severe harm and injury to Plaintiff and were beyond all bounds of decency in a civilized society, mandating punitive damages.

171.  All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101   et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell requests judgment against Defendants for compensatory damages and punitive damages for whatever amounts are just and reasonable, plus

his interest and costs incurred.

## COUNT VIII

**(Negligent Failure to Protect Rights of Mentally Ill Person, in Violation of 34-B M.R.S.A. §§3801, 3805, 3862, et seq and Prohibited Acts and Negligence)**

172.   Plaintiff alleges and realleges Paragraphs 1-171 in the foregoing, and makes them a part of this Count VIII.

173.   At all times pertinent herein, Michael Grendell was a "mentally ill person", and suffered from the "inability to make an informed decision", as defined under Maine Law in 34-B M.R.S.A. §3801(5), (10).

174.   At all times pertinent herein, Law Enforcement officials at the home of Michael Grendell, from approximately June 28-29,2018, knew or should have known that Michael Grendell was a mentally ill person and suffered the inability to make an informed decision, and subsequent to the bombing of his home with him buried under the rubble that he was further bodily injured, both physically and mentally, and after he crawled from the rubble, that he could not hear, was concussed and non-cognitive due to the bomb and its blast effects.

175.   Law Enforcement officials, including Defendant Governmental Agencies, supervisors and individuals, were required by Maine Law and pursuant to 34-B M.R.S.A. §§3801, 3801(4-A), et seq, to protect Michael Grendell from the "likelihood of serious harm," due to:

        A.      A substantial risk of physical harm to the person as manifested by recent threats of, or attempts at, suicide or serious self-inflicted harm;

36

B.     A substantial risk of physical harm to other persons as manifested by recent homicidal or violent behavior or by recent conduct placing others in reasonable fear of serious physical harm;

C.     A reasonable certainty that the person will suffer severe physical or mental harm as manifested by recent behavior demonstrating an inability to avoid risks or to protect the person advocating from impairment or injury; or

D.     For the purposes of 3873-A, in view of the person's treatment history, current behavior and inability to make an informed decision, a reasonable likelihood that the person's mental health will deteriorate and that the person will in the foreseeable future, pose a likelihood of serious harm as defined in paragraphs A, B or C.

176.   At all times pertinent herein, under §3862(1),  Law Enforcement and Defendants, had probable cause to believe that Michael Grendell may be mentally ill and that due to that condition he presented a threat of imminent and substantial physical harm to himself or to other persons and the Law Enforcement officer could act as follows:

a.     May take the person into protective custody; and

b.     If the Law Enforcement officer does take the person into protective custody, shall deliver the person immediately for examination by a medical professional as provided in Section 3863….

177.   When formulating probable cause, the Law Enforcement officer may rely upon information provided by a third party informant if the officer confirms that the

37

informant has reason to believe, based upon those informants recent personal observations of or conversations with a person, that the person may be mentally ill and that due to that condition the person presents a threat of imminent and substantial harm to that person or to other persons, all of which Defendants had here.

178. It is a prohibited act in the State of Maine, pursuant to 34-B M.R.S.A. §3805(2), for a person to cause a willful denial of rights to Michael Grendell, as a person, of the rights accorded to him by the rights and protections afforded him under the subchapter.

179. The Defendants owed a duty of care to Michael Grendell to comply with 34-B M.R.S.A. §§3801, et seq, by protecting him as a mentally ill person who was unable to make informed decisions, to keep him from harm, to consult with proper medical professionals to assist Michael Grendell, and otherwise protect him from serious harm, as required by law.

180. At all times pertinent herein, Defendants' negligently and willfully failed to follow the mandates of 34-B M.R.S.A. §§3801, et seq, and under the general and common law, and by negligence, caused Michael Grendell serious bodily injuries, both physical and mental, for which he continues to suffer great pain and suffering, loss of enjoyment of life and recreational activities, and he suffers a permanent impairment and other great losses, harm and damages.

181. As a direct and proximate result of the actions of the Defendants and their breach of duty to Plaintiff, Plaintiff suffered severe personal injuries, both physical and emotional, he incurred medical bills, lost earning capacity, underwent great pain and suffering, and he suffers a permanent impairment, all of which will continue in the future.

182.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et

seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell requests judgment against Defendants for

compensatory damages and punitive damages for whatever amounts are just and reasonable, plus

his interest and costs incurred.

### COUNT IX
**(Violations and Interference with Maine Constitution and Maine Civil Rights Act Violations)**

183.    Plaintiff alleges and realleges Paragraphs 1-182 in the foregoing, and makes them a part

of this Count IX.

184.    At all times pertinent herein, the Governmental actors described above, as well as others

unknown at this time, were acting under color of State, municipal or County law,  and

deprived Michael Grendell of his Federal rights, and State rights.

185.    The Government policies were the moving force behind their actions, including, but not

limited to, the purchase, transportation, storage, preparation, practice and use of guns,

robots, armored vehicles, machinery, vehicles, bombs and EBC devices on citizens of

Maine and their property.

186.    No objectively reasonable police officer, supervisor or Government official could have

reasonably believed their conduct did not violate the Maine Constitution, including, but

not limited to the sections noted herein, and others, as well as U.S. Constitutional

violations.

187.    The Government actors' actions clearly violated established rights of which an

objectively reasonable official would have known.

188.   A reasonable official should have known that the challenged conduct violated

established rights.

189.   The Defendants all failed to consider the following:

a.   The facts and circumstances of this case, including the level of crime

alleged and its severity,

b.   whether split-decision making was involved or delays were available to

police, the mental health of the arrestee, including his bizarre or irrational

actions, confirming his lack of mental competence, alternative methods of

less  severe and drastic deadly force of a nature available to Law

Enforcement to otherwise effect an arrest,

c.   and the totality of circumstances involved in the use of deadly force by use

of robots, armored vehicles and other vehicles and machinery, provoking a

mentally disabled, elderly, white, single male, bombing Michael Grendell

and his residence, rather than waiting for assistance from mental health or

medical professionals, or other experts to analyze and decide the least

deadly force method to use;

d.   After bombing, failing to assist him with is injuries and disabilities when

he was buried under the rubble of the exploded and collapsed house;

e.   Failure to assist him after the bombing as he crawled from the rubble of

the collapsed house, knowing that he could not hear, was concussed and

non-cognitive, yet shot him in the head and body 3 times by (2) two

snipers;

f.      All done against him without adequate or proper warnings.

g.      under all the circumstances and available resources, and less
        confrontational tactics, and de-escalation methods should have been used.

190.    Further, the Government Agencies involved, by use of EBC/bombs to effect arrests of
        mentally incompetent persons, did through its policies, approvals, purchases, training and
        use thereof, maintained and condoned a custom and practice of depriving individuals of
        their Constitutional Rights by their traditions, policies, ordinances, statutes, manuals and
        actions, promulgated  by Law Enforcement of the agencies and Governments involved.

191.    The actions of the officers, and supervisors and their omissions, before, during and after
        the bombing and shooting of Michael Grendell person and property, constituted a
        conspiracy against Michael Grendell, in violation of Federal and State Law.

192.    Further, any of the officers and supervisors having knowledge that wrongs against
        Michael Grendell were occurring, including §1985 violations, with the power to prevent
        or aid against the wrongs, and neglecting to do so, are guilty of the violations as well.

193.    The officers and supervisors knew or should have known that Michael Grendell was
        mentally incompetent, or a mentally ill person, and not capable of making informed
        choices, acting in a bizarre manner, and that he was suffering some kind severe mental
        breakdown, which as an elderly single white male, placed him in a protected class-base of
        protected persons, and here the officers and supervisors had a tacit understanding that
        they would carry out the bombing, notwithstanding other less lethal means available to
        them, and they were motivated by the class-based invidious discrimination and animus

behind the conspiracy actions, due to Michael Grendell's class-based status as an elderly, single, white male with severe mental health disorders, all of which involved the conspiracy, for the purpose of depriving Michael Grendell of due process and equal protection and equal privileges and immunities, involving an overt act or acts in furtherance of the conspiracy, resulting in injury to Michael Grendell and his property, and animals.

194.   Each of the officers' and supervisors acts and omissions before, during and after the bombing, shooting and activities, constitute a conspiracy against Michael Grendell, and were malicious and outrageous, or were so outrageous that malice can be implied and considered more than a reckless disregard for Mr. Grendell; as Defendants knew of the dangers and protected themselves, rather than Grendell, without warning to Mr. Grendell.

195.   To the extent law enforcement extended or exacerbated the situation to create and/or use the incident as a training exercise for police, is a further violation of Michael Grendell's rights, and further evidence of Defendants wrongdoing.

196.   The police and supervisors became impatient, angry, upset, unwilling to wait for the New Hampshire Mental Crisis Team, and because Michael Grendell was exercising his right to protect himself or his property, to keep and bear arms, or exercise his Constitutional rights, exacerbated their wrongs against Michael Grendell and to the point of bombing him as a retaliatory method.

197.   It was not objectively reasonable to use deadly force against Michael Grendell or his property or animals.

198.   It was cruel and abusive to treat a mentally ill man, and/or physically injured man, caused

42

by police, to wit, Michael Grendell, in the manner he was treated, and contrary to law.

199.   The officers and supervisors were not properly discharging their duties, and making the activity a training exercise was Constitutionally impermissible, including involvement of multiple Government Agencies and nearly 50 officers, was outrageous.

200.   Further, the Government Agencies involved failed to issue widely accepted and non-lethal means by which to apprehend Michael Grendell, a mentally ill person, such as batons, tear gas, drones, mental health experts, pepper-spray, Tasers, chemical mace, less than lethal munitions, or other non-deadly means of physical   force,   including   throw phones,  and as is part of the training of the   officers   involved,   also   acted   not   in accordance with the "protocol for the reporting and investigation of the use of deadly force," in the <u>Maine Law Enforcement Officers Manual</u>, and other applicable standards of care, including adequate and appropriate warnings before inflicting deadly force upon him.

201.   All officers and supervisors had the affirmative duty to intervene and prevent the unlawful use of force by others, used in this action against Michael Grendell, his property and animals.

202.   The Government Agencies and Law Enforcement Officers and supervisors had no right to use Michael Grendell as "a human guinea pig", to effect their 1st fully executed training mission to bomb a citizen of Maine and his property to advance their conspiracy against a mentally ill elderly, single, white male.

203.   The Defendants used Illegal and Unconstitutional Excessive Force a) by use of robots, armored vehicles, machinery or otherwise to provoke Plaintiff; b) by use of an explosive

breaching charge (EBC) or bomb, c) negligent manufacture of EBC, or bomb, by using excessive or defective detonating material in making the bomb, d) failure to consider less destructive or invasive means of effecting the arrest or custody of Michael Grendell, e) failure to consult with structural/construction type engineer or expert before detonating bomb to determine damage, f) failure to consult with propane gas expert before detonation to determine damage, g) failure to consider damage to residence or animals, h) failure to consider injuries to Michael Grendell including concussive, over-pressure effects, hearing loss, disorienting effects of bombing on him, and his subsequent acts after bombing to understand his actions rather than shooting him in his head and body, i) failure to consult and consider mental health or medical experts to use alternative means of effecting arrest, j) failure to use deescalating use of force for mentally ill arrestee; k) converting a T.34-B matter into a training exercise for TT and Bomb Squad and others; l) failure to provide adequate and appropriate warnings to Mr. Grendell.

204. Defendants violated the parameters of the arrest warrant and/or search warrant by breaching his window with a LENCO pole-arm and bombing Grendell's residence and person and shooting him without proper warnings or commands.

205. The Defendants violated 5 M.R.S.A. §§4682, (1-A) et seq (Maine Civil Rights Act), Since the Defendants acting under color of law, intentionally interfered or attempted to intentionally interfere by physical force or violence against Mr. Grendell, and caused damages or destruction of his property or trespassed on his property or by the threat of physical force or violence against him, caused damage or destruction of his property or trespass on property with the exercise and enjoyment by any other person of rights

44

secured by the United States Constitution or the laws of the United States or of rights secured by the Constitution of Maine or laws of the State, or violates section 4684-B, the person whose exercise or enjoyment of these rights has been interfered with, or attempted to be interfered with, all of which occurred here and Mr. Grendell files this civil action for legal and equitable relief.

206.   The Defendants violated 5 M.R.S.A. §4684-B, since the Defendants acting under color of law, intentionally interfered or attempted to intentionally interfere with the exercise or enjoyment by Plaintiff of his rights secured by the United States Constitution or laws of the United States or rights secured by the Constitution of Maine or laws of the State by the following conduct:

    A.    Engaging in the physical obstruction of a building;

    B.    Making or causing repeated telephone calls to a person or a building, whether or not conversation ensues, with the intent to impede access to a person's or building's telephone lines or otherwise disrupt a person's or building's activities;

    C.    Activating a device or exposing a substance that releases noxious and offensive odors with a building;

207.   Further, Defendants violated the following provisions of *Me. Const.,* Art. I,

| Sections: | §1- | "Natural rights-defending life, liberty and protecting property and safety;" |
|---|---|---|
| | §5- | "Unreasonable search and seizures;" |
| | §6- | "Rights of persons accused;" |

§6-A    "Discrimination against persons prohibited;"

§9-     "Cruel and unusual punishment prohibited;"

§16-    "Right to keep and bear arms;"

§19-    "Right to redress for injuries, to person, reputation, property or immunities;"

§21-    "Private property, when to be taken, just compensation;"

§24-    "Other rights not impaired;"

208.    The Defendants also violated Maine Law which prohibits cruelty to animals, by a person intentionally, knowingly or recklessly, under 17 M.R.S.A. §1031(1), all with the intent or deliberate indifference to Plaintiff's constitutional rights, his property, or to intimidate, scare, provoke and cause him harm, as follows:

A.      Attempts to kill an animal;

B.      Attempts to kill an animal by a method that does not cause instantaneous death;

C.      Injuries on animals

D.      Deprives an animal of necessary sustenance, medical attention, proper shelter, protection from the weather or humanely clean conditions;

E.      Tortures an animal to frighten or intimidate a person;

F.      Attempts to kill a cat or dog; *See also* 7 M.R.S.A. §4011.

209.    The Defendants interfered with Plaintiff's Constitutional and Civil Rights as they violated the prohibitions stated in 17 M.R.S.A. §2931, since a person may not, by force or threat of force, intentionally injure, intimidate or interfere with, or intentionally attempt to injure, intimidate or interfere with or intentionally oppress or threaten any other person in

46

the free exercise or enjoyment of any right or privilege, secured to that person by the Constitution of Maine or laws of the State or by the United States Constitution or laws of the United States,  and Defendants did in fact do so against Plaintiff with the intention to do so and with deliberate indifference to Plaintiff's rights.

210.    The actions of Defendants constituted unnecessary excessive deadly force, including the definition in 17-A M.R.S.A. §521(8), and was not justified by §101(5)(A),(B), or otherwise; and including, but not limited to alleged violations of the Maine Criminal Code, also including but not limited to the following acts of wrongdoing:

      a.      17-A M.R.S.A. §802-arson by explosion of property;

      b.      17-A M.R.S.A. §805-aggravated criminal mischief;

      c.      17-A M.R.S.A. §806-criminal mischief;

      d.      17-A M.R.S.A. §1001-criminal use of explosives.

211.    The Defendants intentionally and without permission or consent, trespassed upon Plaintiff's property, causing serious and permanent injury and damages thereto, including bombing and destroying his residence and personal property and animals, and then without permission or consent, destroying, spoiling and covering-up the destroyed and damaged property, they in fact caused.

212.    The Plaintiff seeks legal and equitable relief against Defendants for his damages, including a permanent injunction against Defendants from further entry onto his property, denial of his rights, prohibiting Defendants from bombing others and for his damages, attorneys' fees and costs, interest, and other damages as may be warranted.

213.    As a direct and proximate result of the actions of Defendants, Plaintiff has been damaged

47

as aforesaid, for which he is entitled to compensatory and punitive damages, attorneys' fees and costs and other legal and equitable relief.

214.   All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell requests judgment against Defendants for compensatory damages and punitive damages, equitable relief and for whatever amounts are just and reasonable, plus his interest, fees and costs incurred.

## <u>COUNT X</u>
**(Liability for Explosives and Unreasonably Dangerous Devices and Failure to Warn)**

215.   Plaintiff alleges and realleges Paragraphs 1-214 in the foregoing, and makes them a part of this Count X.

216.   The Defendants violated Federal Law since it is unlawful for a person to transport explosives interstate with the knowledge or  intent that it will be used to kill, injure, or intimidate any individual or unlawfully damage or destroy any building, vehicle or other real or personal property under 18 USC §§844(d), 845 and the police are not exempt by §845.

217.   On information, Defendants, directly and in concert with others, packed and shipped certain volatile and inflammable materials from a point outside of Maine to a point inside Maine, without complying with State statutes regarding the packing and shipping of such material, which caused Mr. Grendell injuries from explosions, whether done in negligence or willfully.

218.   The Defendants were negligent and/or willful in bombing Plaintiff, and Defendants were

48

solely in total and complete control of the bombing material but were negligent in its transporting, building and detonation, for which the doctrine of res ipsa loquitur is applicable.

219.  The Defendants also acted with deliberate indifference to the probable consequences of blasting and bombing Plaintiff, which violates their duty of care to Plaintiff.

220.  The actions of Defendants constituted abnormally dangerous activities for which Defendants are also strictly liable for the abnormally dangerous activities against Plaintiff, and the doctrine of Res Ipsa Locquitor (RIL) also applies here since the damage is such that it would not ordinarily have occurred if the user/defendants/controlling user of the dangerous instrumentally had the required knowledge, and proper care had been exercised.

221.  The Plaintiff alleges Defendants are liable for claims for strict liability, and negligence, as well as intentionally exposing him to the dangerous activity, since blasting/exploding bombs, is an "inherently dangerous" activity.

222.  Defendants also violated 17 M.R.S.A. §2791, which states that when a person engaged in blasting fails to "give seasonable notice thereof, so that all persons shall have time to retire to a safe distance," the person violating the notice mandate "is liable for damages caused by any explosion," which is a statutory violation and also constitutes a violation with the Federal Bureau of Mines Regulations.

223.  In addition, the Defendants negligently failed to obtain all certificates, including the Office of State Fire Marshall, which requires a Certificate of Insurance to permit the use, storage or transport of explosives, as noted in 9 CMR 16 219 031-1 (2007), and any

requirements of Municipalities which require insurance to obtain a blasting permit with proof of insurance, all of which Defendants negligently failed to comply with such applicable standards.

224.    The Defendants were negligent in their failure to adequately warn of use of a robot bomb against Michael Grendell and/or his property.

225.    The Defendants owed a duty of care to reasonably and properly warn Michael Grendell beforehand, that they were going to bomb him and his residence and animals, including but not limited to warnings under 17 M.R.S.A. §2791 and any requirement under 42 USC §1983, for use of deadly force, or otherwise.

226.    The Defendants negligently failed to properly warn Michael Grendell of that impending action, thus, depriving him of his rights to be safe in his house and person, from harm.

227.    On information, the bomb was negligently overcharged and neither built nor detonated properly.

228.    As a direct and proximate result of the Defendants bombing Michael Grendell and his residence, said actions resulted in serious harm, and damages to him and his property and animals.

229.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell requests judgment against Defendants for compensatory damages and punitive damages for whatever amounts are just and reasonable, plus his interest, fees and costs incurred.

**COUNT XI**
**(Strict Liability for Defective or Unreasonably Dangerous Acts-14-M.R.S.A. §221)**

230. Plaintiff alleges and realleges Paragraphs 1-229 in the foregoing, and makes them a part of this Count XI.

231. At all times pertinent herein, Defendants purchased, received or obtained, various goods or products for the design, manufacture, assembly, transportation, or explosion, and explosive components that they would use in their course of business, and which was paid with taxpayers' dollars, including taxes paid by Plaintiff to the State of Maine and U.S. Government.

232. On information, on June 28-29, 2018, the Defendants acted as the transportation, designer, assembler, manufacturer and seller of a bomb to be used against Michael Grendell as the intended user or consumer or receiver of that bomb, which constituted a good or product.

233. On or about June 29, 2018, in Dixmont, Maine, the Defendants administered the bomb as goods or products, in a defective condition unreasonably dangerous to Plaintiff or the user or consumer or to his property in Dixmont, Maine, as it was manufactured in a defective and unreasonably dangerous condition, as it was overcharged with excessive explosives, exceeded the explosive amount that Defendants intended to use it for, to wit, to blow-out or breach one wall of Plaintiff's house to visualize where he was located inside the house, but instead robot detonated the bomb outside the house which caused the house to collapse, and fall onto Plaintiff and his animals inside.

234. The Defendants as the transporters, manufacturers, assemblers and detonators of the

51

bomb, caused serious physical and emotional harm and damages to Plaintiff, and destruction of his property, and Plaintiff was the person they would reasonably have expected to use, consume or be affected by the bomb.

235. The Defendants, as the transporters, manufacturers, assemblers and detonators of the bomb, were the sellers thereof, and were as part of their business, especially the Maine State Police Bomb Team, were engaged in that business and used it as expected and it reached Plaintiff without significant change in the condition it was put into service.

236. The Defendants did not exercise all possible or reasonable care in the preparation and delivery of the bomb to Mr. Grendell, but they owed him that level of care, even when he has not bought the product/bomb from Defendants or entered into any contractual relation with them, even considering an arrest and/or search warrant,  as  he  was  the  person intended to be affected by the bomb as a product, good or service.

237. At all times pertinent herein, the Defendants failed to provide any appropriate or adequate warnings to Plaintiff regarding the intended detonation of an unreasonably dangerous bomb against him and his property.

238. The Defendants are liable for the damages to Plaintiff by the bomb in its defective condition, unreasonably dangerous to Plaintiff, in its transportation, design, assembly, manufacturing, detonation and failure to warn of the bomb hazard or otherwise.

239. As a direct and proximate result of the Defendants robot/bombing Michael Grendell and his residence, resulting in serious harm, and damages to him and his property and animals, Defendants are liable to him.

240. All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et

seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell requests judgment against Defendants for compensatory damages and punitive damages for whatever amounts are just and reasonable, plus his interest, fees and costs incurred.

## COUNT XII
### (Nuisance)

241.    Plaintiff alleges and realleges Paragraphs 1-240 in the foregoing, and makes them a part of this Count XII.

242.    The Defendants, by their actions, including but not limited to bombing Plaintiff's property and person, with the use of rifles, armored vehicles, robots, machinery and explosive devices/bombs, and by shooting Plaintiff after he and his property were bombed, resulting in severe injuries to Plaintiff and his home, land, animals and personal property, rendering the property useless, and not suitable for use or habitation, constituted a nuisance by Defendants against Plaintiff, and particularly by illegally and improperly employing explosive devices, Lenco-pole arms, armored vehicles, machinery, bullets and other substances, to effect the nuisance against Plaintiff.

243.    The Defendants used their property to negatively impact, damage and seize Plaintiff's property and person, including his liberty rights, his health, comfort and the reasonable and quiet enjoyment of his property.

244.    The actions of Defendants constitute a nuisance, for which they are liable to Plaintiff for his damages.

245.    As a direct and proximate result of the willful and negligent acts of the Defendants,

Plaintiff has been damaged.

246.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.


WHEREFORE, Plaintiff, Michael Grendell, demands judgment against Defendants for compensatory and punitive damages for whatever sums are reasonable in the premises, plus his interest and costs incurred.

## COUNT XIII
### (Civil Conspiracy)

247.    Plaintiff alleges and realleges Paragraphs 1-246 in the foregoing, and makes them a  part of this  Count XIII.

248.    The Defendants conspired against the Plaintiff to deprive him of his rights, peace of mind, reputation, privacy, health and economic security, and committed the wrongs against him, all with knowledge of their improper actions and conduct, which caused the Plaintiff herein the damages as aforesaid.

249.    The Defendants are vicariously liable for the damages to Plaintiff.

250.    As a direct and proximate result of the malicious actions of the Defendants, and their breach of duty to Plaintiff, the Plaintiff was severely damaged, as aforesaid.

251.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, request Judgment as follows against Defendants:

1.      The Defendants be required to pay Plaintiff's general damages, including

        damages for violations of his Constitutional rights, assault/battery, pain and

        suffering, permanent impairment, and intentional and negligent infliction of

        emotional distress, and violations of other listed causes of actions, ascertained

        according to    proof at the time of trial.

2.      The Defendants be required to pay Plaintiff's special damages, including but not

        limited to lost wages, earning capacity,  property damages, medical expenses, and

        attorneys' fees, all in a sum to be ascertained at the time of trial.

3.      That Defendants be required to pay Plaintiff exemplary and punitive damages in a

        sum to be ascertained at the time of trial.

4.      With respect to all claims, the Defendants be required to pay Plaintiff's attorneys'

        fees, pursuant to 42 U.S.C. §1988  and Title 5 M.R.S.A. §4681 et seq.

5.      The Defendant be required to pay Plaintiff the cost of suit herein occurred.

6.      Permanently enjoin the Defendants from further violating Plaintiff's

        Constitutional rights and prohibit them from further interference of the

        rights of other citizens, including action involving bombing, shooting, protection

        of a citizen suffering from mental disabilities, deafness or related cognitive

        injuries.

7.      That the Plaintiff have such other and further relief as the Court may deem just

        and proper under all of the circumstances.

## COUNT XIV
### (Medical Care)

252.    Plaintiff alleges and realleges Paragraphs 1-251 in the foregoing, and makes them a part of this Count XIV.

253.    Plaintiff, Michael Grendell makes claim against Defendants for payment of all medical and health care related expenses incurred by him, as a result of these injuries.

254.    As a direct and proximate result of the willful and negligent acts of the Defendants, Plaintiff has been damaged.

255.    All prerequisites to the maintenance of this claim as set forth in 14 M.R.S.A.§§8101    et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, demands judgment against Defendants for compensatory damages for whatever sums are reasonable in the premises, plus his interest and costs incurred.

## COUNT XV
### (Spoliation of Evidence)

256.    Plaintiff alleges and realleges Paragraphs 1-255 in the foregoing, and makes them a part of this Count XV.

257.    The Defendants improperly destroyed evidence, and the property of Michael Grendell, resulting in a denial of due process and a fair trial to Michael Grendell, and they are liable for spoliation of evidence, failure to secure the area, failure to properly document the area, loss or destruction of property, and failure to preserve evidence and the cover-up of the evidence at his property.

56

258.   The actions of the Defendants also resulted in vandalism and conversion of his property.

259.   This cause of action includes all Defendants and Gardner Construction, LLC, which on information, acted as agent for the State Maine and other Defendants in the destruction and cover-up of evidence and property.

260.   As a direct and proximate result of the willful and negligent acts of the Defendants, Plaintiff has been damaged.

261.   All prerequisites to the maintenance of this claim as set forth in 14  M.R.S.A.§§8101     et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell, demands judgment against Defendants for compensatory and punitive damages for whatever sums are reasonable in the premises, including evidentiary inferences against Defendants, plus his interest and costs incurred.

## COUNT XVI
### (Vicarious Liability)

262.   Plaintiff alleges and realleges Paragraphs 1-261 in the foregoing, and makes them a part of this Court XVI.

263.   The City of Bangor, and County of Penobscot and State of Maine are vicariously liable for all other Defendants' tortious actions.

264.   All prerequisites to the maintenance of this claim as set forth in 14  M.R.S.A.§§8101     et seq., have been satisfied or have occurred.

WHEREFORE, Plaintiff, Michael Grendell demands Judgment against all Government actors in an amount that is just and reasonable, and he further requires any other relief as is just, proper and equitable.

Dated at Bangor, Maine
September 11, 2019

N. Laurence Willey, Esq.
N. Laurence Willey, Jr., Esq. #808
Attorney for Michael Grendell
WILLEY LAW OFFICES
P.O. Box 924
Bangor, ME  04402-0924
(207) 262-6222


Dated at Bangor, Maine
September 11, 2019

Ezra A. R. Willey, Esq.
Ezra A.R. Willey, Esq. #5025
Attorney for Michael Grendell
WILLEY LAW OFFICES
P.O. Box 924
Bangor, ME  04402-0924
(207) 262-6222


Dated at Bangor, Maine
September 11, 2019

David W. Bate, Esq.
David W. Bate, Esq. #7340
Attorney for Michael Grendell
DAVID W. BATE LAW OFFICE
15 Columbia Street, Suite 301
Bangor, ME  04401-6355
(207) 945-3233