UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL S. GRENDELL,<br><br>Plaintiff<br><br>v.<br><br>STATE OF MAINE, *et al.*,<br><br>Defendants. | CIVIL ACTION NO.: 1:19-cv-00419-JDL |

**DEFENDANTS' MOTION TO DISMISS WITH
INCORPORATED MEMORANDUM OF LAW**

Pursuant to Fed. R. Civ., P. 12(b)(6), the defendants the State of Maine, the Maine State Police, John E. Cote, Christopher Grotton, Brian MacMaster, Brian Bean, Robert Burke, Alden Bustard, Bernard Campbell, Jeremy Caron, David Coflesky, Bryan Creamer, Andrew Hardy, Christopher Harriman, Caleb McGary, Jeffrey Mills, Jonah O'Roak, Gregory Roy, Benjamin Sweeney, and Chris Tremblay move to dismiss certain defendants and certain claims. In support, the defendants rely upon the following Memorandum of Law:

**MEMORANDUM OF LAW**

**Alleged Facts**[1]

On June 27, 2018, the plaintiff, Michael Grendell, in an effort to recover mail he thought had been stolen from him, had several encounters with Lee Bell "involving the inappropriate use [by Grendell] of firearms or a hatchet, including discharging the firearm." Complaint, ¶ 14. The following day, Bell notified the police that Grendell had shot at him. *Id*., ¶¶ 15-16. Bell told the

---

[1] The defendants do not necessarily agree with these facts, but they take them as true for purposes of this motion. *See Roman-Oliveras v. Puerto Rico Elec. Power Auth.,* 655 F.3d 43, 45 (1st Cir. 2011).

police that he thought Grendell was having a mental health crisis and that he wanted to get help for Grendell. *Id.*, ¶ 16.

At 1:43 p.m. on June 28, 2018, Sergeant Alden Bustard, Trooper Jeremy Caron, and Trooper Bryan Creamer went to Grendell's home in Dixmont, Maine. *Id.*, ¶ 17. Using a public address system, the officers ordered Grendell to come out of the residence with his hands out. *Id.*, ¶ 17. After several minutes, Grendell walked out of the front door wearing only underwear and asked if the officers were the "real police." *Id.*, ¶ 18. The officers identified themselves and directed Grendell to walk away from the residence. *Id*. Grendell did not follow the directions and instead walked back into his house and closed the door. *Id*.

Creamer "deployed to the rear of the residence to establish perimeter security around the residence" and Bustard contacted Detective Greg Roy, the assistant commander of the Maine State Police's Tactical Team. *Id.*, ¶¶ 21-22. Roy activated the Tactical Team. *Id*. At 2:25 p.m., an Assistant District Attorney approved Grendell being charged with "Reckless Conduct with a Firearm, a Class C crime." *Id.*, ¶ 23. Officers at some point also obtained arrest and search warrants. *Id.* ¶ 33. From 2:25 p.m. until 4:07 p.m., various law enforcement officers, including Maine State Police negotiators, arrived at the scene. *Id.*, ¶ 24.

At approximately 6:00 p.m. (still on June 28), Grendell came outside with a leashed dog and holding a handgun with a "Civil War replica rifle strapped on his shoulder." *Id.*, ¶¶ 29, 48, 52. A member of the Crisis Negotiation Team ordered Grendell to drop the gun, but Grendell did not comply and instead went back inside his house. *Id.*, ¶ 42. At that time, and again at 3:00 a.m. (on June 29), Grendell activated the alarm on his truck. *Id.*, ¶¶ 29, 53. At 3:30 a.m., Grendell fired a gun inside of his house. *Id.*, ¶ 31.

At 5:15 a.m., officers used an armored truck (referred to as a "LENCO") to breach a window in Grendell's house. *Id.*, ¶ 55. Grendell responded by firing upon the truck. A four-hour firefight between Grendell and the officers ensued. *Id.*, ¶ 55; *see also id.*, ¶ 56 ("Grendell was arbitrarily shooting at [officers] for hours."); ¶ 62 (Grendell's shots were hitting trees near MSP troopers); ¶ 65 ("Grendell shot at the LENCO and Trooper McGary and Trooper Hardy returned fire."). About three hours into the firefight, Roy stated that he was going ask the MSP's "Bomb Team" to create an explosive breaching charge to "take down the wall of the residence so [officers] could at least visually see where inside the residence Grendell was." *Id.*, ¶ 56; *see also id.*, ¶ 66 (purpose of the breaching charge was to "blow a hole in the wall of the residence so team members could gain a better vantage point of the residence and see [Grendell].").

Officers intended to use a robot to insert the breaching charge through a window. *Id.*, ¶ 57, 64, 67. At 9:15 a.m., the robot began to approach the house with the breaching charge, but Grendell fired upon the robot, disabling it. *Id.*, ¶ 67. Sergeant Chris Harriman reported to Major Grotton that the robot was "dead" but that the charge could still be detonated at the side of the house. *Id.*, ¶ 68. Grotton instructed Harriman to detonate the charge, and Harriman did so. *Id.*, ¶¶ 68-69. The detonation caused the house to collapse. *Id.*, ¶ 70. Grendell emerged from the debris with a baseball bat but then picked up a rifle. *Id.*, ¶ 72. While trying to load the rifle, he was shot by McGary and Hardy. *Id.*[2]

## Standard of Review

In ruling on a motion to dismiss, the Court "accept[s] as true all well-pleaded facts set forth in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011); *see also Román–Oliveras v. Puerto*

---

[2] The complaint alleges, incorrectly, that Grendell was not warned before he was shot. *Id.*, ¶ 73.

*Rico Elec. Power Auth.*, 655 F.3d 43, 45 (1st Cir. 2011).  Although there need not be "detailed factual allegations," a plaintiff must make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 557 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Lister v. Bank of America, N.A.*, 790 F.3d 20, 23-24 (1st Cir. 2015).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Lustgarten v. Lowe's Home Centers, LLC*, No. 2:15-cv-289-NT, 2015 WL 7312442, at *1 (D. Me. Nov. 19, 2015); *Walker v. Nichols*, No. 1:13-cv-259-GZS, 2013 WL 6018614, *3 (D. Me. Nov. 13, 2013) (noting that the allegations must "support a reasonable inference that the defendant bears liability for the harm.").

## Argument

### I. Grendell's Claims Against Eight Defendants Should Be Dismissed Because He Does Not Allege That They Engaged in Any Wrongful Conduct.

All of Grendell's claims against defendants Brian Bean, Robert Burke, Bernard Campbell, David Coflesky, Jeffrey Mills, Jonah O'Roak, Benjamin Sweeney, and Chris Tremblay should be dismissed because Grendell does not allege that they engaged in wrongful conduct.  The only reference in the Complaint to Burke, Mills, O'Roak and Sweeney is that they are members of the Maine State Police.  Complaint, ¶ 4.  Grendell alleges that Bean and Coflesky were at the scene of the incident, *id.*, ¶¶ 24, 34-35, but does not allege that they took

4

any actions that could conceivably form the basis for a legal claim.  Grendell alleges that Campbell was in charge of the Crisis Negotiation Team, *id*., ¶ 30, but does not allege that Campbell engaged in any wrongful conduct.  Finally, Grendell alleges that Tremblay was a member of the "reactionary team" and that, at some point during the events of June 28 and 29, 2018, drove the LENCO, *id*., ¶ 27, 39, but he does not allege that Tremblay did anything wrong.[3]  Because there are no allegations that any of these defendants violated Grendell's rights, committed a tort, or otherwise engaged in conduct that could form the basis for a state or federal claim, all claims against them should be dismissed.

## II. Count VIII Should Be Dismissed Because Defendants Had No Legal Duty to Take Grendell Into Protective Custody.

Count VIII alleges that defendants violated state statutory law by failing to take Grendell into protective custody.  Complaint, ¶¶ 172-182.  Presumably, this claim is made against defendants Bustard, Caron, and Creamer.  *See* Complaint, ¶ 20 (stating that Bustard, Caron and Creamer did not take Grendell into protective custody when they went to his house on the afternoon of June 28, 2018 after receiving the complaint from Bell).[4]  The claim is based on 34-B M.R.S. § 3862, which authorizes a law enforcement officer to take a person into protective custody if the officer "has probable cause to believe that a person may be mentally ill and that due to that condition the person presents a threat of imminent and substantial physical harm to that person or to other persons."  The statute, though, does not <u>require</u> an officer to take a person

---

[3] Grendell also alleges that after the explosion, Tremblay escorted the fire department to Grendell's home to turn off a propane valve.  *Id*., ¶ 75.

[4] In addition to alleging that not taking Grendell into custody violated state statutory law, Paragraph 20 alleges that it violated Title II of the ADA.  As discussed below, however, individuals cannot be held liable under Title II.  Moreover, Title II does not impose on police officers a duty to take a mentally ill person into protective custody.  *See Dunlap v. City of Sandy*, 2019 WL 5075855, at *8 (D. Or. June 7, 2019), *report and recommendation adopted*, 2019 WL 5073559 (D. Or. Oct. 9, 2019); *Amirault v. City of Roswell*, 1996 WL 391986, at *6 (D.N.M. July 11, 1996), *aff'd*, 120 F.3d 270 (10th Cir. 1997).

into protective custody. Thus, even if Bustard, Caron, and Creamer (or any other officer) might have been legally authorized to take Grendell into protective custody (and leaving aside the fact that they could not have done so given that Grendell refused to speak with them and retreated inside his house), they did not violate Section 3862 by not taking him into custody. Further, even if Section 3862 could somehow be construed as imposing an affirmative obligation on law enforcement officers, there would be no basis for concluding that a person who was not taken into protective custody would have a private cause of action. *See, e.g., Hottentot v. Mid-Maine Med. Ctr.*, 549 A.2d 365, 367 (Me. 1988) ("[W]e will recognize a private cause of action to enforce a statute only where the legislative intent to create such a remedy is clear."); *see also Charlton v. Town of Oxford*, 2001 ME 104, ¶ 15, 774 A.2d 366, 372; *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 101 (Me. 1984).[5]

To the extent Grendell's claim is that defendants' failure to take him into protective custody was actionable negligence, that claim fails because defendants owed Grendell no such duty. As the Maine Supreme Judicial Court has recognized, the duty to affirmatively protect another from harm arises in only limited circumstances, such as where the parties have a "special relationship" or where "the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm." *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶¶ 17 & 29, 11 A.3d 308 (quoting Restatement (Second) of Torts § 302B (1965), cmt. e. The complaint alleges no facts suggesting that either of these exceptions apply.

---

[5] Grendell cites to 34-B M.R.S. § 3805(2), which states: "A person is guilty of causing a denial of rights if he willfully causes the denial to any person of any of the rights accorded to him by this subchapter." There is, though, no right to be taken into protective custody. Further, the willful denial of rights is punishable as criminal conduct, 34-B M.R.S. § 3805(3), and does not give rise to a civil cause of action.

6

### III. Counts I, II, and IX Should Be Dismissed Against the State of Maine, Maine State Police, and Individual Defendants in their Official Capacities Because They Are Not "Persons."

Count I asserts a claim against pursuant to 42 U.S.C. § 1983.  Complaint, ¶¶ 94-108. Section 1983 states that "[e]very <u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law. . . ."  42 U.S.C. § 1983 (emphasis added). The Supreme Court has held that a State is not a "person" within the meaning of Section 1983 and thus is not subject to Section 1983 liability. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989); [6] *see also Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."); *Brown v. Newberger*, 291 F.3d 89, 92 (1st Cir. 2002) ("The claims under 42 U.S.C. § 1983 fail because a state and its agencies are not 'persons.'"); *Hill-Spotswood v. Mayhew,* 2015 WL 403931, at *6 (D. Me. 2015) (as an "arm of the State," the Maine Department of Health and Human Services was not subject to Section 1983 liability).  The same analysis applies to Grendell's conspiracy claim under 42 U.S.C. §§ 1985 and 1986.  *See Chadha v. Connecticut Med. Examining Bd.,* 1999 WL 1067805, at *3 (D. Conn. Oct. 29, 1999) (holding that a state is not a "person" under Sections 1981, 1985 and 1986).  Because neither the State nor the Maine State Police are "persons." within the meaning of Sections 1983, 1985, or 1986, Counts I and II should be dismissed as against them.[7]

---

[6] The Court's holding was in part based on the fact that States normally enjoy sovereign immunity and that there was nothing to suggest that Congress, when it enacted Section 1983, intended to abrogate that immunity.  *Id.*, at 66-67.

[7] Even if they were "persons," they would be immune from suit by virtue of Maine's sovereign immunity. *See, e.g., Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-58 (1996); *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 54 (1st Cir. 2003).

Count IX asserts a claim pursuant to the Maine Civil Rights Act ("MCRA"), 5 M.R.S. §§ 4681-4685.  Complaint, ¶¶ 183-214.  The MCRA creates a cause of action for violations of constitutional rights by "any person."  5 M.R.S. § 4682(1-A).  Maine's Law Court has held that just as with Section 1983, the State is not "person" within the meaning of the MCRA.  *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994); *see also Pew v. Scopino*, 904 F. Supp. 18, 32 (D. Me. 1995) ("Finally, since the State is not a "person" under the MCRA, it cannot be liable.").[8]

Finally, in addition to naming the individual defendants in their personal capacities, the complaint also names them "professional" capacities.  To the extent this is an attempt to sue the individual defendants in their *official* capacities, any such claims are barred for the same reasons as the claims against the State of Maine and Maine State Police.  *See Will*, 491 U.S. at 71 (suit against a state official in his or her official capacity is "no different from a suit against the State itself").

### IV. Grendell's Claim Against the Individual Defendants Under Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act Should Be Dismissed Because These Statutes Do Not Provide for Individual Liability.

Count III asserts a claim against defendants pursuant to Title II of the Americans With Disabilities Act and Section 504 of the Rehabilitation Act.  Complaint, ¶¶ 126-143.  "Both statutes provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

---

[8] Count IX also purports to assert a claim directly pursuant to Maine's Constitution.  Maine's Courts have never recognized such an action.  *See Andrews v. Department of Environmental Protection*, 716 A.2d 212, 220, 1998 ME 198, ¶ 23 (Me. 1998) ("We decline to expand the available remedies for a violation of rights guaranteed by the Maine Constitution beyond those which the Legislature in its wisdom has provided."); *see also Pew*, 904 F. Supp. at 32 ("Maine's Law Court has never recognized a cause of action for damages based solely upon violation of the Maine Constitution. There is no basis for me as a federal judge to predict that the Maine Law Court would take such a step."); *Grenier v. Kennebec County*, 748 F. Supp. 908, 913 n.6 (D. Me. 1990).

entity.'" *Nunes v. Massachusetts Dep't of Correction*, 766 F.3d 136, 144 (1st Cir. 2014) (citing 42 U.S.C. § 12132 and 29 U.S.C. § 794(a)).  Under neither statute, though, can individuals be sued.  *Gross v. Landry*, No. 1:17-cv-297-JAW, 2017 WL 5509995, at *5 (D. Me. Nov. 17, 2017) ("'This Court and other courts have held that there is no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act."), *report and recommendation adopted*, 2017 WL 6454235 (D. Me. Dec. 18, 2017); *Flood v. Maine Dep't of Corrections*, No. 1:11-cv-270, 2012 WL 5389533, at *10 (D. Me. Aug. 24, 2012), *report and recommendation adopted*, 2012 WL 5389529 (D. Me. Nov. 2, 2012); *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 n.5 (D. Me. 2012).  Thus, all defendants other than the State of Maine and the Maine State Police should be dismissed from Count III.

### VI. Grendell's Section 1985 Conspiracy Claim Should Be Dismissed Because He Has Not Sufficiently Alleged the Existence of a Conspiracy and There Is No Allegation of Racial or Other Class-Based Discriminatory Animus.

Count II asserts a conspiracy claim pursuant to 42 U.S.C. § 1985(3).  Complaint, ¶¶ 109-125.  There are four elements to such a claim:

> First, the plaintiff must allege a conspiracy; second, he must allege a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; third, he must identify an overt act in furtherance of the conspiracy; and finally, he must show either injury to person or property, or a deprivation of a constitutionally protected right

*Perez-Sanchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008).  To survive a motion to dismiss, a plaintiff "must <u>plausibly</u> allege facts indicating an agreement among the conspirators to deprive the plaintiff of her civil rights."  *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (emphasis added).  "A complaint containing only vague and conclusory allegations of a conspiracy fails to state a plausible claim under section 1985(3)."  *Id*.  Grendell's allegation that

9

state law enforcement officers engaged in a conspiracy during the armed standoff is implausible and is supported only by vague and conclusory allegations and should be dismissed.

Even if Grendell had adequately alleged that existence of a conspiracy, the claim would still fail. This is because for a conspiracy to be actionable under Section 1985(3), it must involve "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *see also Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012). Grendell alleges that defendants' alleged conspiracy was motivated by Grendell's "class-based status as an elderly, single white male with severe mental health disorders, deafness and inability to comprehend." Complaint, ¶ 115. Defendants are aware of no support for the notion that animus based on such characteristics is sufficient for purposes of stating a Section 1985(3) claim.[9]

### VII. Grendell's "Spoliation" Claim Should Be Dismissed Because It Is Not an Independent Tort and Grendell Does Not Allege the Loss of Any Relevant Evidence.

Count XV asserts a claim for "spoliation of evidence." Complaint, ¶¶ 256-261. This claim apparently arises out of the allegation that defendants arranged for a private company to "bulldoze and destroy" Grendell's house. Complaint, ¶¶ 91, 259. Maine's Law Court has never recognized a cause of action for tortious spoliation of evidence. *Breen v. Lucas*, 2005 WL 2736540, at *7 (Me. Super. July 4, 2005); *Butler v. Mooers*, 2001 WL 1708836, at *1 (Me. Super. June 13, 2001). The Massachusetts Supreme Judicial Court expressly refused to recognize a spoliation cause of action. *Fletcher v. Dorchester Mut. Ins. Co.*, 773 N.E.2d 420,

---

[9] Count II also refers to 42 U.S.C. § 1986, which essentially provides a cause of action against persons who had knowledge of a Section 1985 conspiracy and failed to stop it, despite having the power to do so. A prerequisite for a claim under Section 1986 is a claim under Section 1985. *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 218 (D. Mass. 1995). Because Grendell has failed to state a claim under Section 1985, he has failed to state one under Section 1986. Also, as discussed above, the Section 1985 and Section 1986 claims against the State and the Maine State Police can be dismissed on the alternate ground that the State is not a "person" for purposes of those statutes.

427–28 (Mass. 2002).[10]  This Court should decline to create a new cause of action that Maine courts have not seen fit to recognize.  Moreover, in jurisdictions that have recognized the tort, one of the elements is that the destruction of evidence prejudiced the plaintiff's case.  *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993); *Hannah v. Heeter*, 584 S.E.2d 560, 573 (W. Va. 2003); *see also Malinowski v. Documented Vehicle/drivers Sys., Inc.*, 66 F. App'x 216, 222 (1st Cir. 2003) ("In the few states that recognize an independent tort for spoliation of evidence, courts have required, inter alia, that a party show a causal relationship between the act of spoliation and the inability of the complainant to prove her lawsuit.").  Here, there is no allegation that bulldozing Grendell's house resulted in the loss of evidence which otherwise would have supported his claims in this lawsuit.

### VIII.  Grendell's "Liability for Explosives" and "Strict Liability" Claims Should Be Dismissed as Frivolous.

Count XI alleges a claim for "strict liability for defective or unreasonably dangerous acts" pursuant to 14 M.R.S. § 221.  Complaint, ¶¶ 230-240.  Section 221 imposes strict liability on persons "engaged in the business of selling" defective products that are unreasonably dangerous and that result in personal injury or property damage.  The defendants here are not in the business of selling explosive breaching devices.

Count X alleges claim for "liability for explosives and unreasonably dangerous devices and failure to warn."  Complaint, ¶¶ 215-229.  The claim appears to be at least partly premised on 18 U.S.C. § 844(d).  Section 844(d) makes it a crime to transport or receive in interstate

---

[10] The Massachusetts SJC noted that it was a California intermediate appellate court that first recognized a spoliation cause of action and that fourteen years later, California's highest court overruled that decision, finding that "the speculative nature of a cause of action for spoliation would make such a claim virtually impossible to prove." *Id.*, at 427 (citing *Cedars–Sinai Med. Ctr. v. Superior Court*, 954 P.2d 511 (1998) and *Smith v. Superior Court*, 151 Cal.App.3d 491, 502, 198 Cal.Rptr. 829 (1984)).

11

commerce explosives with the knowledge that the explosives "will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property." This provision, though, does not apply to States and their political subdivisions. 18 U.S.C. § 845(a)(3). And, in any event, Section 844(d) is a criminal statute. It does not provide for a civil cause of action.[11]

## Conclusion

For the reasons set forth above, the defendants respectfully request that:

1. Defendants Brian Bean, Robert Burke, Bernard Campbell, David Coflesky, Jeffrey Mills, Jonah O'Roak, Benjamin Sweeney, and Chris Tremblay be dismissed entirely;

2. Counts II, VIII, X, XI, and XV be dismissed as to all defendants;

3. Counts I and IX be dismissed as to the State of Maine, the Maine State Police, and the individual defendants named in their official capacities; and

4. Count III be dismissed as to all individual defendants

DATED:  November 25, 2019               Respectfully submitted,

                                        AARON M. FEY
                                        Attorney General

                                        /s/ Christopher C. Taub
                                        Christopher C. Taub, Deputy Atty. Gen.
                                        Christopher.C.Taub@maine.gov
                                        Jonathan R. Bolton, Asst. Atty. Gen.
                                        Jonathan.Bolton@maine.gov
                                        Six State House Station
                                        Augusta, Maine  04333-0006
                                        Tel.  (207) 626-8800
                                        Fax (207) 287-3145

---

[11] Grendell also alleges a violation of 17 M.R.S. § 2791. Complaint, ¶ 222. That statute requires that "[p]ersons engaged in blasting lime rock or other rocks shall before each explosion give seasonable notice thereof, so that all persons or teams approaching shall have time to retire to a safe distance from the place of said explosion." 17 M.R.S. § 2791. Grendell does not allege that defendants were engaged in rock blasting, so Section 2791 does not apply.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this, the 25th day of November, 2019, I electronically filed the above document with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

DAVID W. BATE
davidbatelaw@gmail.com

EZRA A.R. WILLEY
ezra@willeylawoffices.com

N. LAURENCE WILLEY , JR
lwilley@midmaine.com

/s/ Christopher C. Taub
CHISTOPHER C. TAUB
Deputy Attorney General
Six State House Station
Augusta, Maine  04333-0006
Tel.  (207) 626-8800
Fax (207) 287-3145