## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **MICHAEL S. GRENDELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **1:19-cv-00419-JDL** |
| | ) |
| **STATE OF MAINE, et al.,** | ) |
| | ) |
| **Defendant.** | ) |

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

The Plaintiff, Michael S. Grendell, has brought this action against twenty-five defendants, including the State of Maine; the Maine State Police, eighteen of its troopers and officers, and its Police Bomb Team; and Brian MacMaster of the Maine Attorney General's Office. The complaint also names as defendants an unidentified "Government Agency A" and unidentified individuals, John and Jane Doe. The identified defendants have filed two partial motions to dismiss the complaint (ECF Nos. 9, 30).[1] For reasons I will explain, the motions are granted in part and denied in part.

## I. FACTUAL BACKGROUND

Grendell's complaint alleges the following facts. Beginning in mid-June 2018, Grendell started experiencing mental health issues, and he began behaving abnormally.

---

[1] The second motion to dismiss concerns one individual defendant, Detective Tucker Bonnevie, and its arguments mirror those brought in the first motion to dismiss. For ease of reference, I refer to both motions collectively.

On June 27, Grendell had several encounters with a friend in an effort to recover mail Grendell believed the friend had stolen from him.   During the encounters, Grendell "inappropriate[ly] use[d] . . . firearms or a hatchet, including [by] discharging [a] firearm."  ECF No. 1 ¶ 14.  The following day, the friend notified the police that Grendell had shot at him.  The friend told the police that he thought Grendell was having a mental health crisis and that he wanted to get help for Grendell.

On June 28, at 1:43 p.m., Sergeant Alden Bustard, Trooper Jeremy Caron, and Trooper Bryan Creamer went to Grendell's home in Dixmont, Maine.  Grendell had no telephone.  Using a public address system, the officers ordered Grendell to come out of the residence with his "hands out."  ECF No. 1 ¶ 17.  After several minutes, Grendell walked out of the front door wearing only underwear and asked the officers if they were the "real police."  The officers identified themselves and directed Grendell to walk away from the residence.  Grendell responded by walking back into his house and closing the door.

Trooper Creamer moved to the rear of the residence "to establish perimeter security around" it, and Trooper Bustard contacted Detective Gregory Roy, the assistant commander of the Maine State Police's Tactical Team.  ECF No. 1 ¶¶ 21–22.  Detective Roy then activated the Tactical Team.  At 2:25 p.m., an Assistant District Attorney approved charges against Grendell for "Reckless Conduct with a Firearm."  ECF No. 1 ¶ 23.  Officers at some point also obtained arrest and search warrants.  From 2:42 p.m. until 4:07 p.m., various law enforcement officers, including Maine State Police negotiators, arrived at the scene.

2

At approximately 6:02 p.m., Grendell exited his home with a handgun in one hand and a dog on a leash in the other hand.  Grendell also had a Civil War replica rifle strapped on his shoulder.  A member of the Crisis Negotiation Team ordered Grendell to drop the gun, but Grendell did not comply and instead reentered his home and activated his truck's alarm.  At approximately 3:00 a.m. the next morning, June 29, Grendell activated the alarm on his truck a second time.  At 3:30 a.m. on June 29, Grendell fired a gun inside the house and activated his truck's alarm a third time.

At 5:15 a.m., officers used an armored truck (referred to as a "LENCO") to breach a window in Grendell's house. Grendell responded by firing at the truck.  A four-hour firefight then ensued between Grendell and the officers, during which Grendell shot at the LENCO, and bullets hit trees near several troopers.

About three hours into the firefight, Detective Roy stated that he was going to ask the Maine State Police's "Bomb Team" to create an explosive breaching charge to "take down the wall of the residence so [officers] could at least visually see where inside the residence Grendell was."  ECF No. 1 ¶ 56.  The officers intended to use a robot to insert the breaching charge through a window.

At 9:15 a.m., the Bomb Team drove the robot toward the house with the breaching charge, but Grendell shot the robot, disabling it.  Sergeant Christopher Harriman reported to Major Christopher Grotton that the robot was "dead" but that the charge could still be detonated at the side of the house.  ECF No. 1 ¶ 68. Sergeant Harriman, with instructions from Major Grotton, detonated the charge.  The detonation caused the house to collapse.

As a result of the explosion, Grendell was concussed, suffered from at least temporary deafness, and at least temporarily lost the cognitive ability to hear and understand generally.  He emerged from the debris with a baseball bat and then picked up a rifle.  While trying to load the rifle, Grendell was shot by Troopers Caleb McGary and Andrew Hardy.  The complaint asserts that "[a]t no time was an appropriate warning given to Grendell before [the bomb was detonated or before] he was shot."[2]  ECF No. 1 ¶¶ 71, 73.

## II.  LEGAL ANALYSIS

To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Rodríguez–Reyes v. Molina–Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013) (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Courts apply a two-pronged approach in resolving a motion to dismiss. *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  First, courts must identify and disregard statements in the complaint that merely offer legal conclusions couched as factual allegations. *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Second, courts "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged." *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) (quotation marks and citation omitted).  Courts accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor. *Rodríguez–Reyes*, 711 F.3d at 52−53. Determining the plausibility of a claim is "a context-specific

---

[2]  The Defendants specifically dispute this allegation but acknowledge that the Court must consider it as true at this stage of the proceedings.

task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 53 (quoting *Iqbal*, 556 U.S. at 679).

The Defendants now move to dismiss certain defendants and claims in Grendell's sixteen-count complaint. In particular, the Defendants seek the dismissal of: (1) all claims as to nine individual Defendants; (2) five claims as to all Defendants; (3) two claims as to the State of Maine, the Maine State Police, and the individual Defendants named in their official capacities; and (4) one claim as to all individual Defendants.

## A.    Dismissal of Certain Individual Defendants

The Defendants maintain that the claims against nine individual Defendants—Trooper Brian Bean, Detective Tucker Bonnevie, Trooper Robert Burke, Trooper Bernard Campbell, Trooper David Coflesky, Sergeant Jeffrey Mills, Detective Jonah O'Roak, Detective Benjamin Sweeney, and Sergeant Chris Tremblay—should be dismissed because Grendell's complaint does not allege that they engaged in wrongful conduct. Grendell maintains that the motions to dismiss should be denied as to these nine individual Defendants because they witnessed the events of June 28 and 29 and took no preventative action to prevent the bombing and shooting.[3]

"[A] bystander-officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for a failure to intervene [under § 1983]." *Calvi v. Knox Cty.*, 470 F.3d 422, 428 n.3 (1st

---

[3] Grendell's complaint also alleges that these Defendants are liable under 42 U.S.C. §§ 1985(3), 1986. Because I dismiss the causes of action arising under those statutes against all Defendants, *see infra* Part II.B.1, I do not address them separately here.

Cir. 2006).  However, an officer's "mere presence at the scene, without more, does not

by some mysterious alchemy render him legally responsible . . . for the actions of a

fellow officer."  *Id.* at 428 (citing *Gaudreault v. Municipality of Salem,* 923 F.2d 203,

207 n.3 (1st Cir. 1990)).  In evaluating whether an officer had a realistic opportunity

to intervene, the duration of the incident is a "salient consideration."  *Morris v.*

*Tivnan*, No. CV 14-40164-DHH, 2017 WL 1217109, at *5 (D. Mass. Mar. 31, 2017)

(collecting cases).  Grendell's complaint alleges that his shootout with the police

lasted about four hours and that law enforcement took at least forty-five minutes to

plan and execute the bombing.  I now evaluate the complaint's allegations against

the nine individual Defendants for whom the Defendants seek dismissal,

distinguishing between those whom the complaint alleges were present at the scene

during the events of June 28 and 29 and those whom it does not.

### 1. Individual Defendants Not Alleged to Have Been Present at the Scene

Grendell's complaint contains little mention of Defendants Bonnevie, Burke,

Campbell, Mills, O'Roak, or Sweeney.  The complaint does not discuss Defendant

O'Roak at all, and its only mention of Bonnevie, Burke, Mills, and Sweeney is that

each is a member of the Maine State Police.  The complaint describes Campbell

similarly, but also alleges that he was the commander of the Crisis Negotiation Team,

whom Detective Roy allegedly called "about contacting Grendell's physician or a

mental health physician on communication with Grendell."  ECF No. 1 ¶ 30.  Thus,

Grendell's complaint has not alleged that any of these six Defendants—Bonnevie,

Burke, Campbell, Mills, O'Roak, or Sweeney—were present at the scene.  Grendell's

complaint does not allege that these individual Defendants were involved in the

bombing or firefight or even had knowledge of them.  On a motion to dismiss, "[m]erely reciting elements of a claim will not do, . . . [n]or will alleging facts that are too meager, vague, or conclusory to remove the possibility of relief from the realm of conjecture." *Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) (internal citation and quotation marks omitted).  Thus, the complaint does not plausibly state a claim against these six individual Defendants.  *See, e.g.*, *Rolón-Merced v. Pesquera*, Civil No. 14-1757 (DRD), 2017 WL 888219, at *6 (D.P.R. Mar. 6, 2017).

### 2.   Individual Defendants Plausibly Alleged to Have Been Present at the Scene

Grendell's complaint provides slightly more detail as to the other three individual Defendants for whom the Defendants seek dismissal: Bean, Coflesky, and Tremblay.  Specifically, the complaint alleges that an individual stated that Bean had arrived at the scene at some point during the standoff.  The complaint further alleges that Coflesky was informed by another officer that he would be "responding to a barricaded male subject in Dixmont." ECF No. 1 ¶ 34.  Finally, the complaint alleges that Tremblay was a member of the "Reactionary Team," that Tremblay drove the LENCO at some point, and that Tremblay escorted the Dixmont Fire Department to the destroyed house to close the valves on the propane tanks.

Although these allegations are not especially detailed, the First Circuit has explained that "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013).  And a district court has discretion

to allow "modest discovery" where such discovery "may provide the missing link." *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012).  That is the case here. Although the complaint's allegations are fairly vague as to when, or if, Bean, Coflesky, and Tremblay appeared at the scene, drawing all reasonable inferences in Grendell's favor, and given the length of the alleged shootout and bombing, the Court can infer they arrived before those events ended.  *See Jorge v. Galarza-Soto*, 124 F. Supp. 3d 57, 68 (D.P.R. 2015) (denying a motion to dismiss on a failure to intervene claim even where "the facts as pleaded by Plaintiffs are decently vague, particularly with respect to when [a defendant] arrived to the scene . . . [because] it can be reasonably inferred that [that defendant] arrived on scene before or shortly after" the alleged use of excessive force); *see also Jellyman v. City of Worcester*, 354 F. Supp. 3d 95, 99 (D. Mass. 2019) (denying a motion to dismiss on a failure to intervene claim since the information needed was within the defendants' control); *Rolón-Merced*, 2017 WL 888219, at *3, *6 (same).

Accordingly, the Defendants' Partial Motions to Dismiss are granted as to Defendants Bonnevie, Burke, Campbell, Mills, O'Roak, and Sweeney, and denied as to Defendants Bean, Coflesky, and Tremblay.

**B.   Dismissal of Certain Claims as to All Defendants**

The Defendants maintain that certain claims in Grendell's complaint should be dismissed as to all Defendants, including claims of (1) an unlawful conspiracy under 42 U.S.C § 1985(3) and an unlawful refusal to stop the conspiracy's wrongs under 42 U.S.C. § 1986; (2) a negligent failure to protect the rights of a mentally ill person under 34-B M.R.S.A. §§ 3805 and 3862; (3) violations of federal and state

statutes concerning explosives and abnormally dangerous activities; (4) strict liability for sellers of defective products under 14 M.R.S.A. § 221; and (5) spoliation of evidence. I discuss each of these claims in turn.

### 1. Unlawful Conspiracy; Failure to Stop Unlawful Conspiracy

Grendell's complaint alleges that the Defendants acted in concert to deny him the protections of the United States Constitution in violation of 42 U.S.C. § 1985(3). It also alleges that the Defendants, knowing of such a conspiracy, unlawfully neglected or refused to prevent such wrongs under 42 U.S.C. § 1986. Because a § 1986 claim is dependent on the presence of a conspiracy under § 1985, I begin with the § 1985(3) claim. *See Hahn v. Sargent*, 523 F.2d 461, 470 (1st Cir. 1975). A § 1985(3) claim has four elements: (1) a conspiracy; (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws; (3) an overt act in furtherance of the conspiracy; and (4) either an injury to person or property, or a deprivation of a constitutionally protected right. *See Parker v. Landry*, 935 F.3d 9, 17–18 (1st Cir. 2019) (citing *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). As to the second element—that there was a conspiratorial purpose to deprive Grendell of the equal protection of the laws—"[i]t has long been established that a claim under § 1985(3) requires 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Pérez-Sánchez*, 531 F.3d at 107 (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)).

Grendell's complaint does not sufficiently allege a discriminatory animus behind the conspirators' actions. Specifically, Grendell's complaint alleges only that the Defendants "knew that Michael Grendell was mentally incompetent . . . and that

9

he was suffering some kind [of] severe mental breakdown," and that the Defendants were motivated to act by "Grendell's class-based status as an elderly, single, white male with severe mental health disorders, deafness and inability to comprehend, all of which involved the conspiracy."  ECF No. 1 ¶¶ 113, 115.  A plaintiff cannot avoid dismissal with only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.  Grendell's complaint therefore fails to "allege facts that would permit [a court] plausibly to infer an agreement among the defendants, motivated by some discriminatory animus . . . ."  *Parker*, 935 F.3d at 18.  Accordingly, I grant the Defendants' Partial Motions to Dismiss as to the § 1985(3) claim.[4]

Because "a § 1986 claim must be predicated upon a valid § 1985 claim," the Defendants' Partial Motions to Dismiss are also granted as to the § 1986 claim.  *Oberg v. City of Taunton*, 972 F. Supp. 2d 174, 201 (D. Mass. 2013) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 7 F.3d 1085, 1088 (2d Cir. 1993)); *cf. Maymí v. P.R. Ports Auth.*, 515 F.3d 20, 31 (1st Cir. 2008) ("[A]bsent a showing of conspiracy, [a plaintiff] has no claim under § 1986, which extends liability to those who knowingly failed to prevent conspiracies under § 1985.").

### 2.  Negligent Failure to Protect the Rights of a Mentally Ill Person Under 34-B M.R.S.A. §§ 3805 and 3862

Grendell's complaint also asserts that the Defendants negligently failed to protect his rights as a mentally ill person in violation of 34-B M.R.S.A. §§ 3805 and

---

[4]  Because Grendell has not sufficiently stated a claim based on any of his purported classes (race, gender, marital status, age, and sensory and mental disabilities), I need not determine whether, as a matter of law, each of them could serve as a basis for a discriminatory animus under § 1985(3).

10

3862.  The complaint alleges that Grendell began experiencing mental health issues in mid-June 2018, and no party contests that Grendell met the relevant statute's definition of a "mentally ill person" on June 28 and 29.  *See* 34-B M.R.S.A. § 3801(5) ("'Mentally ill person' means a person having a psychiatric or other disease that substantially impairs that person's mental health . . . .").

   Grendell's complaint alleges that 34-B M.R.S.A. § 3862 required the Defendants to protect Grendell and that the Defendants' failure to do so permits Grendell to bring a civil cause of action against them.[5]  However, § 3862 does not support Grendell's assertion that law enforcement has a duty to protect the mentally ill by taking them into protective custody.  Rather, as its title makes evident, the provision concerns a "law enforcement officer's power" to take a mentally ill person into protective custody:

> If a law enforcement officer has probable cause to believe that a person may be mentally ill and that due to that condition the person presents a threat of imminent and substantial physical harm to that person or to other persons, . . . the law enforcement officer . . . [*m*]*ay* take the person into protective custody . . . .

34-B M.R.S.A. § 3862(1)(A) (West 2020) (emphasis added).  The statute thus does not require that police officers take mentally ill persons into protective custody; it merely permits them to do so under certain circumstances.  *Cf. Johnson v. City of Biddeford*, No. 2:17-cv-00264-JDL, 2020 WL 1877964, at *7 (D. Me. Apr. 15, 2020) (explaining that a police department's general order, which provided certain circumstances under

---

[5]  Grendell's complaint frequently mentions that he suffered from an "inability to make an informed decision" as that term is defined in 34-B M.R.S.A. § 3801(10) and that the Defendants had an obligation to protect Grendell from a "likelihood of serious harm" as that term is defined in 34-B M.R.S.A § 3801(4-A).  Neither of these defined terms appears in the specific statutory provisions cited within Grendell's complaint, and I therefore give them no further consideration.

which an officer "shall be empowered" to take a person into protective custody, did not require an officer to do so).

Grendell asserts that a second statutory provision, 34-B M.R.S.A. § 3805(2), makes the actions authorized by § 3862 mandatory.  That provision prohibits the "denial to any person of any of the rights accorded to him under [the] subchapter" containing § 3805.  34-B M.R.S.A. § 3805(2) (West 2020).  However, while § 3805(2) prohibits an officer from violating a person's rights as enumerated in other sections, *see, e.g.*, 34-B M.R.S.A. § 3803 ("Patient's rights"), it does not itself convert § 3862's provision about a "law enforcement officer's power" into a grant of rights.

Moreover, the Maine Law Court has explained that it "will recognize a private cause of action to enforce a statute only where the legislative intent to create such a remedy is clear." *Hottentot v. Mid-Me. Med. Ctr.*, 549 A.2d 365, 367 (Me. 1988) (citing *Larrabee v. Penobscot Frozen Foods, Inc.,* 486 A.2d 97, 101 (Me. 1984)); *see also Charlton v. Town of Oxford*, 774 A.2d 366, 372 (Me. 2001).  The penalty for a violation of one's rights under § 3805 is a criminal punishment, not a civil remedy.  *See* 34-B M.R.S.A. § 3805(3) ("[C]ausing a denial of rights is a Class C crime.").  Thus, the Legislature demonstrated no intent to provide a civil remedy for violations of § 3805. Accordingly, even if 34-B M.R.S.A. § 3805 and § 3862, individually or in tandem, required the officers to take Grendell into protective custody, Grendell would not be

able to maintain a cause of action against the Defendants under them.[6]  Accordingly, the Defendants' Partial Motions to Dismiss are granted on this count.[7]

### 3. Violations of State and Federal Laws and Maine Common Law Concerning Explosives

Grendell's complaint alleges that the Defendants violated various state and federal laws concerning the transportation and usage of explosives.  Specifically, Grendell's complaint asserts that the Defendants violated a federal criminal statute, 18 U.S.C. § 844(d); a Maine state statute, 17 M.R.S.A. § 2791; and the Maine common law for strict liability associated with abnormally dangerous activities.  I review each of these allegations in turn.

First, Grendell's complaint seeks to hold the Defendants civilly liable under 18 U.S.C. § 844(d), which in pertinent part provides that, "[w]hoever transports or receives . . . in interstate or foreign commerce any explosive with the knowledge or intent that it will be used to kill, injure, or intimidate any individual or unlawfully to damage or destroy any building, vehicle, or other real or personal property, shall be" imprisoned or fined or both.  18 U.S.C.A. § 844(d) (West 2020).  Section 844 is the penalties provision of a criminal statute, 18 U.S.C. § 842, which itself provides no civil cause of action.  *See Lazore v. Ky. Powder Co.*, 178 F.3d 1295, 1999 WL 97248, at *2 (6th Cir. Feb. 19, 1999) (unpublished table decision) (affirming summary

---

[6]  Grendell's complaint also suggests that this count, which alleges that the Defendants should have taken protective custody of him, is cognizable under the common law of negligence.  Grendell, however, has not identified a duty that obligated the Defendants to take him into protective custody.

[7]  Because I dismiss the count for the reasons stated above, I do not address the Defendants' additional argument that, under the facts alleged in Grendell's complaint, the Defendants had no opportunity to take Grendell into protective custody because Grendell refused to speak with them and retreated into his house.

judgment for defendant since "Congress did not intend to provide a cause of action under § 842"); *see also Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) (noting that various other statutory sections under Title 18 "do not give rise to a civil action for damages"). It follows that § 844, the penalties provision of that criminal statute, also does not give rise to a civil cause of action.[8]

Second, Grendell's complaint seeks to hold the Defendants liable under 17 M.R.S.A. § 2791, which provides that, "[p]ersons engaged in blasting lime rock or other rocks shall before each explosion give seasonable notice thereof, so that all persons or teams approaching shall have time to retire to a safe distance from the place of said explosion" and that "[n]o such explosion shall be made after sunset." 17 M.R.S.A. § 2791 (West 2020). The case here does not involve persons engaged in blasting lime rock or other rocks. *Cf. Dyer v. Me. Drilling & Blasting, Inc.*, 984 A.2d 210, 218 (Me. 2009) (noting that 17 M.R.S.A. § 2791 "deals with blasting 'lime rock or other rocks,' requiring blasters to give seasonable notice so that those approaching stay a safe distance from the explosion"); *id.* at 223 (Alexander, J., concurring in part) (noting that 17 M.R.S.A. § 2791 established "strict liability in blasting cases in certain, very limited, circumstances"). Thus, § 2791 is inapplicable here.

Third, Grendell's complaint seeks strict liability for the use of a bomb under Maine common law. The Maine Law Court has adopted the Restatement (Second) of Tort's §§ 519–520 (1977) as to strict liability for abnormally dangerous activities. *See*

---

[8] Grendell's complaint also alleges that the Defendants negligently failed to obtain certificates of insurance necessary to transport and use the explosive. Grendell, however, does not point to any statute under which the Defendants could be held civilly liable for this alleged failure.

*Dyer*, 984 A.2d at 215.  The Defendants did not address whether dismissal of this claim is proper, and I therefore decline to dismiss it.

In sum, the Defendants' motions to dismiss are granted as to Grendell's claims under 18 U.S.C. § 844(d) and 17 M.R.S.A. § 2791 and denied as to the strict liability claim under Maine common law.

### 4. Liability under Maine's Strict Liability Statute for Defective Products

Grendell's complaint alleges strict liability for the use of a bomb under 14 M.R.S.A. § 221.  That statute provides that, subject to certain conditions, "[o]ne who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person."  14 M.R.S.A. § 221 (West 2020).  The complaint does not allege that any of the Defendants were sellers of the bomb that blew up Grendell's home, and therefore dismissal of this count is warranted.  *See Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1147–48 (Me. 1983) (dismissing complaint against defendant who "did not sell the product in question, defective or otherwise, and thus lacked the status of 'one who sells'"); *see also Austin v. Raybestos-Manhattan, Inc.*, 471 A.2d 280, 284 (Me. 1984) (noting that 14 M.R.S.A. § 221 "imposes liability only on the person who sells the product in question").[9]

---

[9]  Grendell, citing 14 M.R.S.A § 161 and the Restatement (Second) of Torts § 402A cmt. f (1965), asserts that he may nevertheless maintain a claim for strict liability, because privity is not a required element.  However, the presence or absence of privity between Grendell and the Defendants does not bear on the issue here, which is whether the Defendants were sellers of the bomb used on Grendell's house.

### 5. Spoliation of Evidence

Grendell's complaint contains a claim for spoliation of evidence, which is apparently based on the allegation that the Defendants arranged for a private company to "bulldoze and destroy" Grendell's home sometime after the explosion on June 29.  *See* ECF No. 9 at 10.

"There is no precedent in Maine, state or federal, recognizing a tort cause of action for negligent destruction of a cause of action or for negligent spoliation of evidence prior to litigation."  *Koken v. Auburn Mfg., Inc.*, No. CIV. 02-83-B-C, 2004 WL 51100, at *3 (D. Me. Jan. 8, 2004).  "Although most state courts of last resort have not addressed the issue, it appears that of those that have been asked to recognize the cause, most have declined the invitation."  *Id.* (collecting cases).  Moreover, "[i]n the few states that recognize an independent tort for spoliation of evidence, courts have required, [among other things]*,* that a party show a causal relationship between the act of spoliation and the inability of the complainant to prove her lawsuit." *Malinowski v. Documented Vehicle/drivers Sys., Inc.*, 66 F. App'x 216, 222 (1st Cir. 2003).  Grendell's complaint does not allege that the Defendants' conduct resulted in the spoliation of any evidence necessary to his case.  Therefore, the claim for spoliation of evidence is dismissed.  *See Gagne v. D.E. Jonsen, Inc.*, 298 F. Supp. 2d 145, 147–48 (D. Me. 2003) (concluding that a party's proposed addition of a spoliation claim to the complaint would be futile, in part, because it did "not allege all of the elements of such a claim as it is recognized in other jurisdictions").

**C.**   **Dismissal of Certain Claims as to the State of Maine, the Maine State Police, and the Individuals Defendants Sued in Their Official Capacities**

The Defendants seek dismissal of certain claims contained in Grendell's complaint against the State of Maine, the Maine State Police, and the individual Defendants in their official capacities.   In particular, the Defendants seek dismissal of claims for the alleged (1) violations of the United States Constitution under 42 U.S.C. § 1983; (2) unlawful conspiracy under 42 U.S.C § 1985(3); (3) unlawful refusal to stop the conspiracy's wrongs under 42 U.S.C. § 1986; and (4) violations of the United State Constitution and the Maine Constitution under the Maine Civil Rights Act, 5 M.R.S.A §§ 4681–4685.   Each of these statutory sections provides for liability against a "person."   The Defendants maintain that the State of Maine, the Maine State Police, and the individual Defendants in their official capacities are not "persons" within the meaning of these statutes,  and  thus cannot be held liable under them.

As an initial matter, I note that claims brought against the individual Defendants acting in their official capacities and against the Maine State Police are the same as the claims brought against the State.   As the Supreme Court has explained, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," which "is no different from a suit against the State itself."   *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citations omitted).   Accordingly, I review whether the plaintiff may assert his claims against the State under the four statutory provisions at issue. For reasons I will explain, precedent firmly establishes that he cannot.

As to claims under § 1983, the Supreme Court has explained that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.*; *accord Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 124 (1st Cir. 2003) ("No cause of action for damages is stated under 42 U.S.C. § 1983 against a state, its agency, or its officials acting in an official capacity."). The same holds true for claims brought under § 1985 and § 1986. *See Woodward v. Chautauqua Cty.*, No. 15-CV-0246-RJA-MJR, 2016 WL 4491712, at *2 (W.D.N.Y. July 5, 2016) ("The Supreme Court's logic [in *Will*] extends to sections 1985 and 1986, which similarly refer only to wrongs committed by 'persons' and not by states."), *adopted by* 2016 WL 4475044 (W.D.N.Y. Aug. 25, 2016); *Santiago v. Keyes*, 839 F. Supp. 2d 421, 428 (D. Mass. 2012) (collecting cases); *see also Parker v. Dall-Leighton*, No. 2:17-CV-216-GZS, 2017 WL 6210892, at *7 n.9 (D. Me. Dec. 8, 2017). Finally, the Maine Civil Rights Act's protections and immunities are generally "coextensive with those afforded by 42 U.S.C. § 1983," *Estate of Bennett v. Wainwright*, 548 F.3d 155, 178–79 (1st Cir. 2008), and the Maine Law Court has acknowledged that "the State is not a 'person' within the scope of the statute," *Jenness v. Nickerson*, 637 A.2d 1152, 1158 (Me. 1994). *See also Doe I v. Williams*, 61 A.3d 718, 739 (Me. 2013) ("A state, including a state official in his or her official capacity, is not a person within the meaning of § 1983 or the MCRA . . . .").

Accordingly, the Defendants' Partial Motions to Dismiss are granted as to the § 1983, § 1985(3), § 1986, and Maine Civil Rights Act claims brought against the State of Maine, the Maine State Police, and the individual Defendants in their official capacities.

D.     **Dismissal of Claims Under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act as to All Individual Defendants**

Grendell's complaint also asserts that the Defendants violated Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.   "Both statutes provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'"   *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) (quoting 42 U.S.C. § 12132 and citing 29 U.S.C. § 794(a)); *see also Toledo-Colon v. Puerto Rico*, 812 F. Supp. 2d 110, 117 (D.P.R. 2011) ("In accordance with the approach taken by the parties and other courts, the court construes Plaintiff's ADA and Rehabilitation Act counts as presenting a single claim.").   Grendell's complaint alleges, among other things, that the Defendants treated Grendell without regard for his disabilities:

> The Defendants refused proper, appropriate and adequate services, auxiliary aids, or proper commands [for Grendell], and then became annoyed, impatient and perturbed with [him], even though they knew or should have known [he] could not understand or hear their commands and they intentionally and with deliberate indifference, failed and refused to wait for, or provide, psychological or mental health experts to arrive and assist with providing those necessary services and programs to [Grendell] regarding his disabilities.

ECF No. 1 ¶ 130.   The Defendants maintain that claims under Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act may not be brought against individuals acting in their individual capacities.

19

The Defendants are correct. "This Court and other courts have held that there is no individual liability under Title II of the ADA or section 504 of the Rehabilitation Act." *Gross v. Landry*, No. 1:17-CV-00297-JAW, 2017 WL 5509995, at *5 (D. Me. Nov. 17, 2017) (citing *DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 n.5 (D. Me. 2012)), *adopted by* No. 1:17-CV-00297-JAW, 2017 WL 6454235 (D. Me. Dec. 18, 2017). *Accord Abbott v. Town of Salem*, No. CIV. 05-CV-127-SM, 2006 WL 276704, at *4 (D.N.H. Feb. 2, 2006) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." (alteration in original) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001))). Accordingly, the Defendants' Partial Motions to Dismiss are granted as to all the individual Defendants for the claims under Title II of the ADA and section 504 of the Rehabilitation Act.

## III. CONCLUSION

For the foregoing reasons, the Defendants' Partial Motions to Dismiss (ECF Nos. 9, 30) are hereby:

1. **GRANTED in part** as to Defendants Tucker Bonnevie, Robert Burke, Bernard Campbell, Jeffrey Mills, Jonah O'Roak, and Benjamin Sweeney as to all claims;

2. **GRANTED in part** as to the remaining Defendants as to:

   a. Count II (Conspiracy Under 42 U.S.C § 1985(3); Unlawful Refusal to Stop the Conspiracy's Wrongs under 42 U.S.C. § 1986);

   b. Count VIII (Negligent Failure to Protect the Rights of a Mentally Ill Person under 34-B M.R.S.A. §§ 3805 and 3862);

    c. Count X's claims (Liability for Explosives and Unreasonably Dangerous Devices and Failure to Warn) under 18 U.S.C. § 844(d) and 17 M.R.S.A. § 2791;

    d. Count XI (Strict Liability for Sellers of Defective Products under 14 M.R.S.A. § 221); and

    e. Count XV (Spoliation of Evidence);

3. **GRANTED in part** as to Defendants the State of Maine, the Maine State Police, and the individual Defendants named in their official capacities as to:

    a. Count I (Violations of Rights Under the United States Constitution Pursuant to 42 U.S.C. § 1983);

    b. Count II (Conspiracy Under 42 U.S.C § 1985(3); Unlawful Refusal to Stop the Conspiracy's Wrongs Under 42 U.S.C. § 1986); and

    c. Count IX (Violations of Rights under the United States and Maine Constitutions Pursuant to the Maine Civil Rights Act, 5 M.R.S.A §§ 4681–4685);

4. **GRANTED in part** as to all individual Defendants in their individual capacities as to Count III (Violations of Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12132, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794);

5. **DENIED in part** as to Defendants Brian Bean, David Coflesky, and Chris Tremblay as to all claims not otherwise dismissed as to them; and

6. **DENIED in part** as to Count X's claim (Liability for Explosives and Unreasonably Dangerous Devices and Failure to Warn) for strict liability under Maine common law regarding the use of explosives.[10]

---

[10]  The Motions to Dismiss did not address several other Defendants and counts contained in Grendell's complaint, which therefore remain part of the case. The other named individual Defendants include Brian MacMaster of the Maine Attorney General's Office and various members of the Maine State Police including, Colonel John E. Cote, Major Christopher Grotton, Sergeant Alden Bustard, Trooper Jeremy Caron, Trooper Bryan Creamer, Trooper Andrew Hardy, Sergeant Christopher Harriman, Trooper Caleb McGary, and Detective Gregory Roy. The counts not addressed by this Order include state-law claims for assault and battery, negligence, negligent and intentional infliction of emotional distress, nuisance, civil conspiracy, "medical care," and "vicarious liability."

**SO ORDERED.**

**Dated:  July 10, 2020**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**